680 So.2d 700 (1996)
STATE of Louisiana
v.
Terry PAGE.
No. 95-KA-2401.
Court of Appeal of Louisiana, Fourth Circuit.
August 21, 1996.
*704 Laurie A. White, Anne T. Turissini, Law Office of Laurie A. White, New Orleans, for Appellant.
Harry F. Connick, District Attorney, Joseph E. Lucore, Assistant District Attorney, New Orleans, for Appellee.
Before CIACCIO, LOBRANO and JONES, JJ.
LOBRANO, Judge.
Defendant, Terry Page, was charged by bill of information with possession with intent to distribute marijuana and possession of more than two hundred but less than four hundred grams of cocaine, violations of Louisiana Revised Statutes 40:966 and 967, respectively.
Defendant was arraigned on September 2, 1994 and pled not guilty to both counts. *705 Trial was held on June 19, 1995. Defendant was found guilty of possession with intent to distribute marijuana and attempted possession of more than two hundred but less than four hundred grams of cocaine.
On August 1, 1995, defendant was sentenced to serve twenty-five years at hard labor on the conviction for possession with intent to distribute marijuana.[1] Defendant was sentenced to twenty five years at hard labor without benefit of probation, parole or suspension of sentence on the attempted possession of cocaine charge. Defendant was also fined $100,000.00. On January 12, 1996, defendant was adjudicated a second felony offender on the attempted possession of cocaine conviction. Defendant's original sentence was vacated and defendant was resentenced to twenty five years at hard labor without benefit of probation, parole or suspension of sentence.[2]

FACTS:
On June 30, 1994, Jefferson Parish Sheriff's Office Narcotics Agent, Keith Simone and Drug Enforcement Agent, Ralph Holiman, were working a joint operation at New Orleans International Airport in an effort to identify and detain suspected drug traffickers. The agents identified a subject named Andrew Mitchell who had flown in from Los Angeles the previous night, purchased a ticket with cash and was scheduled to depart early that morning. The agents located and detained Mitchell for questioning. Mitchell displayed several "gang" tattoos. Mitchell gave the agents conflicting information concerning his identity and presence in New Orleans. Finally, Mitchell admitted that his real name was Kevin Mitchell and that he had just been released from jail. He also told the agents that he had stayed at the La Quinta Inn in Kenner the previous night. However, the agents' prior investigation had revealed that Mitchell stayed at the La Quinta Inn in New Orleans East. Mitchell consented to a body search. The search revealed a phone number written on paper from the La Quinta Inn. After questioning, Mitchell was released. He flew back to Los Angeles.
The agents then targeted the La Quinta Inn in New Orleans East for further investigation and surveillance. Their investigation revealed that a black male named Troy Lyons paid cash to rent rooms 217, 219 and 230 the previous night. Surveillance began on the three rooms. During the surveillance, the agents observed defendant arrive in a white Monte Carlo. Defendant entered room 219 without knocking. After several minutes, defendant departed room 219 and entered room 230. When defendant exited room 230, he was carrying a small white plastic bag and returned to room 219. Shortly thereafter, defendant left room 219 carrying a large white sack which appeared to the agents to contain several smaller packages. Defendant then got into his car and left.
The agents followed defendant. They decided to make an investigatory stop. When Agent Holiman attempted to stop defendant by use of a blue police light, defendant sped up and led the agents on a high speed chase which ended when defendant collided with another vehicle. Defendant abandoned the vehicle and attempted to flee the area. He was subsequently apprehended. When the agents returned to defendant's vehicle, they found small packages of marijuana scattered in and around the car. The total weight of the marijuana recovered was approximately one and one-half pounds. Defendant was then placed under arrest and searched. The agents recovered a key to room 219 and a cellular telephone. The cellular phone number matched the phone number on the paper found on Kevin Mitchell.
*706 The agents returned to the La Quinta Inn and secured rooms 219 and 230 while waiting for a search warrant. Upon entering room 219, the agents observed packaging indicative of drug trafficking. The agents then proceeded to room 230. Agent Simone met a maid who stated that she had just cleaned the room and opened the door for Simone. Once inside, Simone observed a pile of clothes in the corner. He looked under the beds and found bags containing many smaller bags of marijuana weighing approximately one and one-half pounds. Simone also found approximately three hundred ninety grams of crack cocaine.
Once the search warrant was obtained, the agents recovered an additional amount of crack cocaine from room 230 and an additional thirty pounds of marijuana from room 219.
Defendant appeals his conviction and sentence asserting the following assignments of error:
1) Defendant was not charged by a valid written bill of information in violation of his rights and law as required by Louisiana Code of Criminal Procedure article 384, Article 1, Sec. 13 of the Louisiana Constitution, the Sixth Amendment to the United States Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.
2) Defendant was subjected to an illegal search and seizure and the evidence seized pursuant to such illegal search must be suppressed as obtained in violation of his rights under Article 1, Sec. 5 of the Louisiana Constitution and the Fourth and Fourteenth Amendments to the United States Constitution.
3) Defendant was denied due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution because he was not presented with all discoverable tangible evidence prior to trial as required by Article 1, Sec. 16 of the Louisiana Constitution and Code of Criminal Procedure article 718 subsection 3.
4) Defendant was denied due process of law under the Fourteenth Amendment to the United States Constitution and was not afforded a fair trial as provided by Article 1 Sec. 16 of the Louisiana Constitution in that prior crimes evidence was referred to by the state during trial, thereby causing unfair prejudice pursuant to Louisiana Code of Evidence article 404(B).
5) Defendant was denied due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and he was not afforded a fair trial as provided for by Article 1, Sec. 16 of the Louisiana Constitution in that hearsay evidence was erroneously admitted into evidence and defendant was unfairly prejudiced by the admission of evidence in violation of Louisiana Code of Evidence article 802.
6) Defendant was denied his right of a speedy trial as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Sec. 16 of the Louisiana Constitution.
7) Defendant was denied due process of law as guaranteed by the fourteenth Amendment to the United States Constitution in that the filing of the multiple bill and his adjudication and sentence as a habitual offender under the multiple bill was untimely.
8) Defendant's sentence as to count one of the bill of information was unconstitutionally excessive in that it resulted in the cruel and unusual punishment of the defendant in violation of the Eighth and Fourteenth Amendments to the United States Constitution.
9) The evidence presented was insufficient to support a finding of guilty as charged to possession with intent to distribute marijuana and as to attempted possession of cocaine (200-400 grams), denying defendant due process of law under the Ninth and Fourteenth Amendments to the United States Constitution and Article 1, Sec. 2 and 16 of the Louisiana Constitution of 1974.
10) Defendant requests a review of the record for errors patent.

ASSIGNMENT OF ERROR 10:
Defendant requests a review of the entire record for errors patent.
*707 Our review reveals an error in the sentence imposed on defendant's conviction for possession with intent to distribute marijuana.
Louisiana Revised Statute 40:966(B)(2) provides that a person convicted of possession with intent to distribute marijuana shall "be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years and pay a fine of not more than fifty thousand dollars." The record shows that the trial court imposed a sentence of twenty five years at hard labor. However, the court failed to impose a fine as required by law. The failure to impose the fine makes the sentence illegally lenient. However, this Court will not correct errors favorable to a defendant where the issue is not raised by the State. State v. Fraser, 484 So.2d 122 (La.1986). No other errors patent were found.

ASSIGNMENT OF ERROR 1:
Defendant contends that the State erred in proceeding to trial without a valid bill of information charging defendant with a crime. Specifically, defendant argues the State dismissed the charges against him when the State nolle prosequied count one against co-defendant Rodney Smith. Under count one of the bill of information there is a notation which reads, "nolle pros 5/24/94".[3] Defendant claims this notation indicates the State nolle prosequied count one against him.
In support of his argument, defendant cites State v. Buttner, 411 So.2d 35 (La.1982). In Buttner, the defendant was charged with attempted second degree murder by bill of information filed on March 31, 1980. The defendant was arraigned on April 3, 1980, and pled not guilty. On June 30, 1980, the State nolle prosequied the bill of information filed March 31, 1980, and filed an oral "direct bill" charging the defendant with attempted first degree murder. The defendant waived a formal arraignment and entered a plea of not guilty. After a trial by jury, the defendant was found guilty as charged. The trial record revealed that the defendant had been tried on the attempted second degree murder charge. On appeal, the defendant argued that the trial court erred in proceeding to trial when no valid bill of information had been filed. Upon reversing the defendant's conviction, the Supreme Court noted that there was only one written bill of information in the record, that is, the bill of information filed on March 31, 1980, charging defendant with attempted second degree murder. The minute entry reflected that the bill of information had been nolle prosequied on June 30, 1980. The "direct bill" filed by the State on June 30, 1980, had been filed orally. Louisiana Code of Criminal Procedure Articles 382 and 384 require a written accusation.[4] "Where there is no written accusation of crime there can be no valid arraignment, trial or conviction." Buttner, supra, at 37.
A review of the record indicates that defendant's reliance on Buttner is misplaced. Buttner is distinguishable from the instant case.
In the instant case, the State did file a written accusation against defendant and co-defendant, Rodney Smith. A review of the docket master and minute entry reveal that on May 24, 1995, Smith entered a guilty plea to a reduced charge on count two and the *708 State nolle prosequied count one as to Smith only. Nothing in the record indicates that the State nolle prosequied any charge against defendant.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 2:
In this assignment of error, defendant challenges the constitutionality of the agents' initial stop and subsequent search of his automobile and hotel rooms which resulted in the seizure of the evidence used against him.
A) Defendant asserts the agents had no reasonable suspicion to stop him and any evidence seized as a result of the illegal stop was inadmissible.
Reasonable cause for an investigatory stop is something less than probable cause for arrest and must be determined under the facts of each case. The issue is whether the officers had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from government interference. The right to make an investigatory stop must be based upon reasonable cause to believe that the suspect has been, is, or is about to be engaged in criminal activity. State v. Ossey, 446 So.2d 280 (La.1984), cert. den. Ossey v. Louisiana, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Belton, 441 So.2d 1195 (La.1983), cert. den. 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Andrishok, 434 So.2d 389 (La.1983). The detaining officer must have knowledge of specific, articulable facts which reasonably warrant the stop. State v. Lee, 462 So.2d 249 (La.App. 4th Cir.1984). The totality of the circumstances must be considered in determining whether reasonable cause exists. Belton, supra at 1198.
Louisiana Code of Criminal Procedure Article 215.1 allows a police officer to stop a person in a public place whom "he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." While flight, nervousness or startled behavior at the sight of a police officer is not in and of itself enough to constitute reasonable cause to make an investigatory stop, these facts may be highly suspicious and lead to a finding of reasonable cause to detain the individual. Belton, supra at 1198.
In the instant case, the agents attempted to stop defendant after they had observed him entering rooms 219 and 230 which had been placed under surveillance. The agents observed defendant leave the rooms carrying various bags which appeared to contain smaller bags. The defendant matched the description of the person who had rented the rooms with cash.[5] These facts, coupled with the information obtained from Kevin Mitchell support the agents' reasonable suspicion that defendant was engaged in drug trafficking and thus they had reasonable cause to make an investigatory stop. In attempting to stop defendant, the agents approached in their vehicle using a blue police light. This attempted stop was the usual kind encountered by motorists. Rather than stop, defendant sped up and led the agents on a high speed chase which resulted in a collision with another vehicle. Defendant then attempted to flee on foot. After he was apprehended and detained, the agents returned to defendant's vehicle where they discovered a bag of marijuana partially hanging out of the car and numerous smaller bags of marijuana lying in and around the vehicle in plain view. Considering the totality of the circumstances we find the agents had reasonable cause to stop defendant. The subsequent seizure of the marijuana was legal pursuant to the plain view doctrine. State v. Taylor, 623 So.2d 952 (La.App. 4th Cir.1993).
B) Defendant asserts the evidence seized from the hotel rooms was the product of an illegal search because no warrant was obtained prior to the search.
Defendant asserts that the subsequent search of rooms 219 and 230 and the seizure of the marijuana was illegal. Specifically, defendant contends that the drugs found in room 230, prior to the execution of the warrant, were illegally seized and should have *709 been suppressed. The State counters that the agents had reason to secure the rooms while waiting to obtain the warrant based on exigent circumstances. In addition, the State argues that the evidence seized from room 230 is evidence that would have been located once a search warrant was obtained and, as such, is admissible pursuant to the doctrine of inevitable discovery.
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320, 1326 (La.1979), cert. den., Rudolph v. Louisiana, 454 U.S. 1142, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a "protected" area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
Even if evidence is found as a result of a violation of a defendant's constitutional rights, the evidence would nevertheless be admissible if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The inevitable discovery doctrine is recognized in Louisiana. See, State v. Nelson, 459 So.2d 510 (La.1984), cert. den., Nelson v. Louisiana, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985).
In the instant case, the agents, upon finding the marijuana in defendant's vehicle, had probable cause to believe that contraband would be found in the hotel rooms and that the contraband could be destroyed by defendant's cohorts. The agents knew that three rooms had been rented by the same person, Troy Lyons, indicating that defendant was not alone. Furthermore, one of the officers who continued the surveillance, observed two men leave room 230 after defendant left. Thus, there was evidence of co-perpetrators who could destroy evidence. We are satisfied that the agents were justified in securing the hotel rooms while waiting for the search warrant.
Upon entering room 219, the agents found drug trafficking materials. They then went to secure room 230. Agent Simone observed clothing in the corner of the room. He looked under the bed and found bags of marijuana and cocaine. The agents then waited for the warrant before completing the search.
While defendant's argument that Agent Simone should not have searched under the bed before obtaining the warrant has merit, the cocaine and marijuana found under the bed would be admissible pursuant to the "inevitable discovery" rule because the agents would have discovered the narcotics anyway upon executing the warrant. Nix v. Williams, supra.
C) Defendant asserts the search warrant was not valid because the probable cause determination was based on the fruit of an illegal search.
Defendant complains that the search warrant was invalid because it contained information concerning the drugs found under the bed in room 230, prior to the issuance of the warrant.
Louisiana Code of Criminal Procedure Article 162 provides that a search warrant may be issued "only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for the issuance of the warrant." In State v. Duncan, 420 So.2d 1105, 1108 (La.1982) our Supreme Court held that probable cause exists when:
the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched. (citations omitted) See also, State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writ den. 531 So.2d 764 (La.1988).
The facts which form the basis for probable cause to issue a search warrant must be contained "within the four corners" *710 of the affidavit. Duncan, supra at 1108. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480, 482 (La.1984), cert. denied, Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). The reviewing Court must determine whether the "totality of circumstances" set forth in the affidavit is sufficient to allow the magistrate to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him that there is a reasonable probability that contraband will be found. The duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis" for concluding that probable cause existed. Manso, supra at 482.
Defendant is correct that the information concerning the drugs found under the bed in room 230 should not have been included in the application for the warrant. However, upon excising this information, we find that there still existed probable cause for the magistrate to have issued the warrant.[6]
D) Defendant argues that the search warrant was invalid because the agents misrepresented the facts.
Defendant asserts that the agents made substantial misstatements of the facts in the warrant application rendering the warrant illegal.
In State v. Rey, 351 So.2d 489, 491-492 (La.1977), the Louisiana Supreme Court addressed the approach to be taken when reviewing an application for a search warrant based on a complaint of intentional misrepresentations or inaccurate statements. The Court stated:
Because the invasion of home and privacy cannot be justified by misrepresentations, and in order to insure that the magistrate, and not the affiant, determines probable cause, this court has recognized on numerous occasions the defendant's right to traverse the allegations made by the affiant. [Citations omitted]. We have held that minor inaccuracies in the affidavit may not affect the validity of the search warrant (e.g. State v. Thomas, 329 So.2d 704 (La. 1976); State v. Chaffin, 324 So.2d 369 (La. 1976))[, cert. denied; Chaffin v. Louisiana, 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 832 (1976)].
The Fifth Circuit Court of Appeals was faced with this problem in U.S. v. Thomas, 489 F.2d 664 (5th Cir.1973), cert. denied, 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975). That court noted that when faced with an affidavit containing inaccurate statements the preferred approach is to excise the inaccurate statements and then examine the residue to determine if it supports a finding of probable cause. If, however, the misrepresentations were intentionally made, a different result is required. Because these distorted statements constitute a fraud upon the courts and represent impermissible overreaching by the government, a warrant based on an affidavit containing intentional misrepresentations must be quashed.
We are in agreement with the approach described by the Fifth Circuit and adopt it as our own.
In this context, "intentional" means a deliberate act designed to deceive the issuing magistrate. State v. Lamartiniere, 362 So.2d 526, 529, note 2 (La.1978).
In the instant case, the application for the warrant reads as follows:
That probable cause does exist for the issuance of a search warrant authorizing the search of rooms 219, 220 and 230 of La Quinta Inn located at 8400 1-10 Service Road, New Orleans, Louisiana.
* * * * * *
[o]n June 30, 1994, Officer Keith Simone, Jefferson Parish Sheriff's Office (JPSO) Narcotics, and Ralph Hollman (sic), Drug Enforcement Agency (DEA) New Orleans assigned to the New Orleans Airport, made a profile stop of a suspected drug trafficker, Kevin Mitchell, using the alias Andrew Mitchell, who was traveling to Los Angeles, a narcotics source city.

*711 Mitchell stated that he was visiting family members in New Orleans and was returning to Los Angeles. After Mitchell gave permission for a search of his person, officers found a piece of paper from a La Quinta Inn tablet. When asked where he was staying, Mitchell stated La Quinta Inn near the airport.
Officers checked with Delta Airlines, the air carrier issuing his ticket, and found that he had given the phone number 246-5800, the phone number of the La Quinta Inn located at 8400 1-10 Service Road in New Orleans, as his home number. At this point, Mitchell furnished officers with his real name, Kevin Mitchell, and correct date of birth, September 30, 1967. Hollman (sic) then queried the NADAS criminal history computer and discovered that Mitchell had an extensive narcotics record, as well as a murder charge. In addition, Mitchell admitted to having been a member of the Bloods gang in Los Angeles. Mitchell was not wanted and was then released by officers. Mitchell boarded his plane and departed to Los Angeles.
DEA Intelligence agents queried the management of the hotel about Mitchell's stay but were told Mitchell had not registered. Management did inform the agents of an incident which occurred on June 29, 1994. According to management, a Troy Lyons had rented three hotel rooms, 217, 219 and 230. On June 30, 1994, Lyons again rented room 230 but had not rented 217 and 219.
Agents established a surveillance of the hotel including the three rooms and observed a black male, matching the description of Troy Lyons provided by hotel management, arriving at the hotel in a white Oldsmobile Cutlass. Agents observed Lyons enter room 230 and then leave immediately thereafter and enter room 219, where he stayed briefly. He then exited the room and entered his vehicle. Surveillance units followed the vehicle to attempt to effect a vehicle stop.
Lyons, upon observing the lights and hearing the sirens, attempted to out run the units. A pursuit ensued which ended with Lyons' vehicle involved in a collision. As Lyons jumped out of his vehicle, he was observed throwing a bag of marijuana in the street. Lyons (sic) attempted to flee on foot, but was apprehended. Agents then determined that Lyons' correct name was Terry Page.
Agent Sal Labue, who remained at the hotel, observed two black males exit room 230, one was approximately 5'8", 180 lbs., with a dark complexion. The second male, 5'9", 180 lbs., wearing a black t-shirt with "Nike" printed on it, walked towards room 219, turned around and left the hotel.
Agents returned with a key removed from Page's pocket and secured rooms (sic) 219 and observed numerous ziploc bags and plastic wrappings, consistent with narcotics packaging, as well as three nylon zippered bags in the room.
As Agents Keith Simone and Kent Wolhkart walked to room 230, a maid was exiting the room. Agents asked the maid if the occupant had checked out, to which she replied "yes." Agents then entered the room and found articles of clothing and a bag containing several ounces of crack cocaine under a mattress and under the other bed a ziploc bag containing numerous jewelry baggies of marijuana, as well as a second baggie containing a quantity of marijuana.
While officers were in the room, a black male, later identified as Rodney Smith, entered the room with a key. Agents then arrested Smith. Smith stated that he did not know anything about the contraband in the room and that Troy was staying in the room.
Defendant asserts the application set forth in bad faith the following misstatements: (1) the affidavit stated that a description of Troy Lyons had been given and that defendant matched that description; (2) the affidavit stated that a maid had just exited room 230 and informed the agents that the occupant had checked out; and (3) the affidavit requested a search of room 220 which the alleged Troy Lyons had not rented.
Agent Simone testified at the suppression hearing that he did not have a description of Troy Lyons. However, Agent Holiman testified at trial that he obtained a description of *712 Troy Lyons from the hotel manager. Apparently, Simone was not aware that the hotel manager had given Holiman a description of Troy Lyons.
Agent Simone testified that he did not ask the maid if the occupant of room 230 had checked out. Rather, Simone requested that the maid unlock the door so that he could enter and secure the room.
At the suppression hearing both Simone and State Trooper Robert Hogan, Jr. testified that Hogan composed the warrant and affidavit after receiving the information from Simone. Simone acknowledged that he had not reviewed the warrant prior to its execution, but when he did, he found that miscommunication had created some errors in the affidavit. It is apparent that the description of Troy Lyons, the person who actually rented the rooms, was similar to that of defendant. For that reason the officers thought that the person they observed, and ultimately stopped, was Troy Lyons. After stopping him, they learned he was Terry Page, the defendant. However, the defendant was the same person they observed at the hotel, whose suspicious activities led to their investigatory stop.
The trial court was aware of the errors and did not find either agent in bad faith. We find no error in that determination. It is not the function of the reviewing court to reevaluate the credibility of witnesses and then proceed to overturn factual determinations of credibility. State v. Richardson, 425 So.2d 1228, 1232 (La.1983).
We also conclude that the request to search room 220 was a clerical error. Room 220 is mentioned only in the preamble to the affidavit and in the last sentence. Room 220 is never mentioned in the paragraphs describing the results of the surveillance and investigation which led the agents to believe that defendant was involved in drug trafficking at the hotel.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 3:
Defendant argues that he was prejudiced by the testimony of Agent Holiman concerning the cellular telephone found in defendant's possession. Holiman testified that a cellular telephone was taken from defendant at the time of his arrest. The telephone number matched a number listed on a piece of paper taken from Kevin Mitchell. Holiman informed the Court, outside the presence of the jury, that the information concerning the telephone was not placed in the police report as the telephone was returned to the defendant. The trial court held that since the prosecutor had no knowledge of the cellular telephone, she could not have disclosed such evidence to defendant.
Generally, where a defendant has been lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such a prejudice may constitute reversible error. State v. Strickland, 398 So.2d 1062, 1067 (La.1981). However, the failure of the State to comply with the discovery procedure will not automatically result in reversal. Rather, the Appellate court must review the record for a determination of whether any prejudice may have resulted from the non-compliance causing the trier of fact to reach the wrong conclusion. State v. Ray, 423 So.2d 1116, 1118-1119 (La. 1982).
Defendant has not shown any prejudice from the complained of testimony. Agent Holiman testified that the phone was returned to defendant. He explained that cellular telephones are no longer seized from suspects. The phone number is recorded and the phone is returned. Furthermore, defendant cannot argue prejudice because his cellular phone number was found in Mitchell's possession. The phone numbers found on the paper in Mitchell's possession, including defendant's number, were listed in the police report and provided to defendant. Thus, defendant had knowledge of the link between himself and Mitchell.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 4:
Defendant asserts that he was prejudiced when Agent Holiman referred to defendant by his alias, "Terry Williams" because the use of his alias constituted evidence of prior crimes. We disagree.
*713 In State v. Allen, 94-1895 (La.App. 4th Cir. 9/15/95), 661 So.2d 1078, 1085-1086 writ denied, 95-2557, 95-2475, (La. 2/2/96), 666 So.2d 1087, this Court held that reference to a defendant's alias is not an unambiguous reference to other crimes. Defendant was not prejudiced by Holiman's reference to his alias.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 5:
Defendant argues that the trial court erred when it allowed Agent Holiman to testify as to information given to him by the manager of the La Quinta Inn. Defendant asserts the testimony constituted inadmissible hearsay.
On cross-examination, defense counsel asked Holiman why a line-up identification was not conducted. The witness responded that an identification was not made because defendant matched the description of the person who rented the three rooms the previous night. Holiman stated that the hotel manager had provided him with a description. Thereafter, defense counsel continued to question Holiman on the same issue. Holiman then testified that defendant matched the description given by the manager and proceeded to give the substance of the description. At that point, defense counsel objected on the basis of hearsay. Defendant elicited the testimony about which he now complains. His objection is without merit.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 6:
Defendant contends that his right to a speedy trial was violated as trial did not commence until June 19, 1995, nine months after the filing of the bill of information and almost one year from the date of the alleged offenses.
The constitutional right to a speedy trial, based on the Sixth Amendment of the United States Constitution and Article 1, Section 16 of the Louisiana Constitution of 1974, attaches at the time the defendant becomes accused either by indictment, bill of information, or by arrest and actual restraint. State v. Gale, 526 So.2d 861 (La. App. 4th Cir.1988). In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court set forth a four part test for determining whether a defendant's right to a speedy trial has been violated. The factors include the length of the delay, the reasons for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant as a result of the delay.
The record discloses the bill of information was filed on August 30, 1994. Defendant was arraigned on September 2, 1994. On September 30, 1994, a motions hearing was continued by defendant. The motion hearings were subsequently held on October 14, 1994, October 21, 1994 and November 4, 1994. Defendant sought supervisory review from the denial of his motion to suppress the evidence. On December 1, 1994, this Court denied defendant's writ application.[7] Defendant then filed writs of certiorari in the Louisiana Supreme Court. Writs were denied by the Supreme Court on January 13, 1995. On January 17, 1995, trial was continued on motion of the State. On February 7, 1995, trial was continued at the request of defendants and reset for a status hearing on February 10, 1995. At the status hearing, trial was set for March 21, 1995. The State was granted a continuance on March 21, 1995 and again on March 30, 1995. On May 4, 1995, defense counsel filed a motion to withdraw. Trial was set for May 24, 1995. On that date, trial was continued due to a murder trial in progress. Trial was held on June 19, 1995.
Applying the Barker factors to the instant record, we find that defendant's right to a speedy trial was not violated. The delays in proceeding to trial were attributable to both the State and defendant and were not unreasonable. Furthermore, while defendant asserted his right to a speedy trial on September 30, 1994, one month after the filing of the bill of information, defendant did not continue to urge his right during the time period prior to trial of which he now complains. As noted in Barker, "the more serious *714 the deprivation, the more likely a defendant is to complain ..." Barker, 407 U.S. at 531-532, 92 S.Ct. at 2192-2193. Defendant obtained new counsel on May 4, 1995. Trial was held six weeks after new counsel was enrolled, less than one year from the filing of the bill of information.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 7:
Defendant alleges that the trial court erred when it denied his motion to quash the multiple bill of information because it was untimely filed. We disagree.
Louisiana Revised Statute 15:529.1(D), the multiple offender statute, does not provide a time period in which a multiple bill should be filed and the matter adjudicated except to note that a defendant may be charged as a multiple offender if "at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted" of another felony. In State v. Broussard, 416 So.2d 109, 110 (La.1982), the Supreme Court noted that although Revised Statute 15:529.1 does not provide a time limitation, a multiple bill must be filed within a reasonable time after the State learns that a defendant has a prior felony conviction. The Court stated:
The same considerations which underlie the constitutional right to a speedy trial compel a conclusion that upon conviction a defendant is entitled to know the full consequences of the verdict within a reasonable time. Since the enhancement of penalty provision is incidental to the latest conviction, the proceeding to sentence under the provision should not be unduly delayed, at p. 110-111.
The jurisprudence reveals that delays in filing multiple bills ranging from three months to twelve months have been reviewed by this Court. The particular circumstances of each case were considered in determining if the delay was reasonable. In most cases, the State provided adequate reasons for the delay. See, State v. Williams, 620 So.2d 475 (La.App. 4th Cir.1993), writ denied, 629 So.2d 344 (1993); State v. Thornton, 599 So.2d 919 (La.App. 4th Cir.1992); State v. Roberts, 588 So.2d 759 (La.App. 4th Cir.1991), writ denied, 591 So.2d 707 (La.1992); State v. Noel, 585 So.2d 652 (La.App. 4th Cir.1991); State v. Abraham, 521 So.2d 511 (La.App. 4th Cir. 1988); State v. Patterson, 459 So.2d 714 (La. App. 4th Cir.1984).
In the instant case, the State gave defendant notice at the sentencing hearing that it would be filing a multiple bill of information. The prosecutor stated at the multiple bill hearing that the delay in filing the bill occurred because the State had attempted to obtain certified copies of defendant's convictions in California. When the State was unable to obtain this documentation, it proceeded to file the multiple bill based upon defendant's prior conviction in Louisiana. Considering that the State was waiting for information from another state, and that defendant was fully aware that he was to be multiple billed, the delay of five months in filing the multiple bill was not unreasonable.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 8:
Defendant complains that his sentence on Count I is illegal and excessive and on Count II, illegal.

A) Count I:
Defendant argues that the sentence imposed on Count I, possession with intent to distribute marijuana, is illegal because the trial court failed to state that the sentence was to be served with benefit of probation, parole or suspension of sentence. We disagree.
Louisiana Revised Statute 40:966(B)(2) provides that a person convicted of possession with the intent to distribute marijuana shall "be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years and pay a fine of not more than fifty thousand dollars." The statute does not require a sentence be served without benefits. The decision to sentence defendant to a suspended sentence or probation was within the discretion of the trial court. Obviously, the court did not intend to give these benefits. However, the failure to mention that defendant was entitled to parole is of no consequence. Defendant is parole eligible but the Court is under *715 no obligation to make this part of the sentence.
Defendant also complains that his sentence on Count I is excessive.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment."
A sentence which appears severe is considered excessive and unconstitutional if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Caston, 477 So.2d 868 (La.App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in LSA C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Brogdon, supra; State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
In sentencing defendant, the trial court noted that the defendant had one prior conviction in Louisiana for possession of cocaine in 1994. Defendant was placed on three years active probation in January, 1994 and was on probation at the time of the present offense. Defendant also had three prior convictions in California for possession of narcotics in 1985 for which he received three years probation. In 1986 defendant was convicted of a misdemeanor offense of carrying a concealed weapon for which he received ninety-nine days in jail. In 1989 defendant was convicted for transporting and selling narcotics. He received three years suspended sentence and three years probation.
The court also noted:
[t]his defendant is not entitled to receive a suspended sentence or be placed on probation for this particular offense. It should be noted that the quantity of narcotics involved was extremely large. It was over 200 grams of cocaine, 200 to 400 grams of cocaine and a significant, a significant quantity, two, I believe it was suitcases filled with marijuana which the defendant was found to be in possession in a motel room. Obviously there can be no question in my mind that this person is a courier or a transport of narcotics, bringing narcotics in this community to be dissimulated to the people in this area. Considering the very significant record I believe that there should be very little consideration given to you for the offenses for which you have beenfor the offense of which this Jury, a jury of twelve persons found you guilty. I do find there is a basis in fact for finding you guilty of these particular charges. I believe what the significant background that you have necessitates my imposing the sentence I will impose.
As to count one of the Bill of Information, that being the marijuana charge, it shall be the sentence of the Court with regard to Terry Page, he shall be ordered to be ordered (sic) to be turned over to the Director of Louisiana Department of Corrections for period of twenty-five years at hard labor. You shall receive credit for anytime you have already served in connection with your case.
Thus, the reasons given by the trial court reveal that the sentence imposed is not excessive and was tailored to the particular circumstances of this case.

B) Count II:
Defendant argues his original sentence as to Count II was illegal because the Court sentenced him to a term in excess of the maximum allowed by law. Specifically, defendant asserts that he was convicted of attempted possession of cocaine pursuant to *716 Louisiana Revised Statute 14:27(D)(3)[8] which mandates a sentence no greater than one-half of the largest fine and to a term of imprisonment not greater than one-half of the longest term of imprisonment. Thus, he argues that he could not have been sentenced to a term greater than 15 years. La.R.S. 40:967(F)(2)(b) and 40:979[9]. While defendant is correct that his original sentence exceeded the maximum allowed, the argument is moot. The trial court vacated this sentence when defendant was adjudicated a second offender and resentenced defendant pursuant to Louisiana Revised Statute 15:529.1. Pursuant to this statute, defendant's sentence would have to fall within the range of 7½ years and 30 years. Defendant was sentenced to twenty five years at hard labor. Defendant's sentence is well within the range allowed by law.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 9:
Defendant asserts the State failed to produce sufficient evidence to sustain his convictions.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La. App. 4th Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green, supra. "[A] reviewing court *717 is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. Louisiana Revised Statute 15:438 is not a separate test from Jackson, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
To prove a defendant attempted to possess a controlled dangerous drug, the State must prove that the defendant committed an act tending directly toward the accomplishment of his intent, i.e. possession of the drugs. State v. Chambers, 563 So.2d 579 (La.App. 4th Cir.1990). Moreover, the State need only establish constructive possession, rather than actual or attempted actual possession of cocaine, to support an attempted possession conviction. State v. Jackson, 557 So.2d 1034 (La.App. 4th Cir.1990). A person found in the area of the contraband can be considered in constructive possession if the illegal substance is subject to his dominion and control. State v. Trahan, 425 So.2d 1222 (La.1983). An intent to distribute can be inferred from the quantity found in the defendant's possession. Trahan, supra.
In the instant case, Agents Holiman and Simone testified that one and one-half pounds of marijuana were found in defendant's vehicle. In addition, the agents found thirty pounds of marijuana and narcotics packaging in room 219. A key to room 219 was found on defendant's person. The testimony of the agents revealed that defendant fit the description of the person who rented room 230. The agents observed defendant enter room 230 without knocking and leave with a white bag. The motel manager stated that the same person rented rooms 219 and 230.
Thus, we find the State presented sufficient evidence for the trier of fact to determine that defendant exercised dominion and control over the two motel rooms and the drugs found therein as well as the drugs found in his vehicle.
This assignment of error is without merit.
For the following reasons, defendants convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The sentencing transcript indicates that the trial court sentenced defendant to serve twenty-five years at hard labor on this count. The minute entry for that date states that defendant was sentenced to serve twenty five years at hard labor without benefit of probation, parole or suspension of sentence. Where there is a discrepancy in the record between the minute entry and the transcript, the transcript controls. State v. Lordi, 543 So.2d 599 (La.App. 4th Cir. 1989).
[2] Defendant was charged with a co-defendant, Rodney Smith. On May 24, 1995, Smith pled guilty to a reduced plea of simple possession of cocaine on count two. The state nolle prosequied count one as to Smith.
[3] "94" is an obvious clerical error. It should be "95".
[4] Article 382:

A. A prosecution for an offense punishable by death, or for an offense punishable by life imprisonment, shall be instituted by indictment by a grand jury. Other criminal prosecutions in a district court shall be instituted by indictment or by information.
B. (1) A prosecution for violation of an ordinance and other criminal prosecutions in a parish court shall be instituted by affidavit or information charging any offense.
(2) A prosecution for violation of an ordinance and other criminal prosecutions in a city court shall be instituted by affidavit or information charging any offense supported by an affidavit.
(3) Criminal prosecutions in a juvenile court or family court shall be instituted by affidavit, information, or indictment.
Article 384:
An information is a written accusation of crime made by the district attorney or the city prosecutor and signed by him. It must be filed in open court in a court having jurisdiction to try the offense, or in the office of the clerk thereof.
[5] As we explain, infra, defendant was not the person who actually rented the rooms. However, it is apparent that his description matched that of Troy Lyons, who did rent the rooms.
[6] See affidavit in support of the warrant quoted infra.
[7] State v. Page, 94-K-2342 (La.App. 4th Cir. 12/1/94).
[8] La.R.S. 14:27(D)(3):

D. Whoever attempts to commit any crime shall be punished as follows:
* * * * * *
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
[9] La.R.S. 40:979 provides:

A. Except as otherwise provided herein, any person who attempts or conspires to commit any offense denounced and or made unlawful by the provisions of this Part shall, upon conviction, be fined or imprisoned in the same manner as for the offense planned or attempted, but such fine or imprisonment shall not exceed one-half of the punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.
B. Any person who attempts or conspires to distribute or possess with intent to distribute any substance classified in Schedule I, as provided for in R.S. 40:963 and R.S. 40:964 which is a narcotic drug (all substances in Schedule I preceded by an asterisk "* ") shall, upon conviction, be imprisoned at hard labor for not less than eight nor more than fifty years without benefit of parole, probation or suspension of sentence and may, in addition, be required to pay a fine of not more than ten thousand dollars.
La.R.S. 40:967(F)(2)(b):
At the time of the offenses, La.R.S. 40:967(F) provided that anyone convicted of possession of more than 200 but less than 400 grams of cocaine would be sentenced to serve a term of imprisonment at hard labor of not less than ten years but no more than thirty years. By acts 1994, No. 77 the legislature amended the statute to read as follows:
(2) Except as otherwise authorized in this Part:
* * * * * *
(b) Any person who knowingly or intentionally possesses two hundred grams or more, but less than four hundred grams, or amphetamine or methamphetamine or of a mixture or substance containing a detectable amount of amphetamine or methamphetamine or any of their analogues as provided in Schedule 11(C) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than twenty years, nor more than sixty years, and to pay a fine of not less than one hundred thousand dollars, nor more than three hundred fifty thousand dollars.