*1094
 
 JOAN BERNARD ARMSTRONG, Chief Judge.
 

 | ,011 August 12, 2009, the State charged Ruben Carter and Anthony Decquir with one count each of illegal possession of stolen things valued over $500. Mr. Carter subsequently pled not guilty to the charge, while Mr. Decquir remains at large. The court heard and denied Mr. Carter’s motion to suppress the evidence on December 14, 2009. Mr. Carter objected and noted his intent to seek writs, and the court granted him until January 15, 2010, to do so. Mr. Carter filed his writ in this court on that date asking for expedited consideration because trial was set for February 9. This court denied writs on that date, finding that Mr. Carter had an adequate remedy on appeal.
 
 State v. Carter,
 
 unpub. 2010-0082 (La.App. 4 Cir. 1/15/10). Mr. Carter sought writs in the Louisiana Supreme Court, and that court granted his writ application and remanded the case to this court for briefing, argument, and opinion.
 
 State v. Carter,
 
 2010-0303 (La.3/12/10), 28 So.3d 1016. On remand, the State filed a response on March 23, and Mr. Carter replied on March 25 and again on March 30. On March 31, this court stayed the April 1 trial pending its disposition of this writ. Oral argument was held on April 7.
 

 Detective Roger Caillouet testified at the hearing on the Motion to Suppress that he conducted an investigation in early June 2009 that led to Ruben Carter’s 12arrest. He stated that on May 29, officers responded to a call of a suspicious person in the 1900 block of Stephen Girard Street. The call did not describe the suspicious person. When the officers arrived on the scene, they learned that the suspect had gone and could possibly be found at 4234 St. Anthony Street. The officers went to that location, went inside a residence at that address, and found Mr. Carter and Anthony Decquir. Mr. Carter and Mr. Decquir had a black nylon bag that contained various medals and pins, a Baume & Mercier watch, and other items bearing the seal of the City of New Orleans.
 

 Det. Caillouet testified that he was later informed by Det. Anthony Mayfield that on June 4, Sybil and Jacques Morial reported a burglary at their home, bearing municipal number 1101 Harrison Avenue, during which a computer and men’s clothing were taken. Det. Mayfield told Det. Caillouet that the items found in the nylon bag at 4234 St. Anthony matched some of the items taken in the burglary. Jacques Morial subsequently met with Det. Cail-louet in the police property room and identified the items recovered from Mr. Carter as property belonging to him, his mother, and his late father. At that point, Det. Caillouet rebooked Mr. Decquir, who was already in jail, in connection with the property in the bag and obtained an arrest warrant for Mr. Carter.
 

 Det. Caillouet testified on cross-examination that he was not one of the officers who responded to the suspicious person call on May 29, but those who did so indicated that they found no one at the scene when they arrived. The officers contacted dispatch, which contacted the complainant, who directed them to 4234 St. Anthony. The officers indicated that the building at that address was an abandoned house, and when they went inside, they found Mr. Carter and Mr. Decquir with the nylon bag with the items inside. They arrested Mr. Decquir on an ^outstanding warrant, seized the bag, and placed it in the evidence room. They did not arrest Mr. Carter at that time.
 

 The State submitted the application and arrest warrant for Mr. Carter. The application, for Detective Caillouet was the affi-ant, outlined the foregoing facts, noting,
 
 inter alia,
 
 that when the officers respond
 
 *1095
 
 ed to the suspicious person call, they were directed to an abandoned house at the corner of St. Anthony and Mandolin Streets where they found Mr. Carter and Mr. Decquir in possession of a black nylon Adidas bag. The officers seized the bag and found the described contents. Both men denied ownership of the bag, stating that they found the items under a bridge. The application further states that on June 4, 2009, Sybil and Jacques Morial reported a burglary of their home at 1101 Harrison Avenue wherein men’s clothing, a computer, and a printer were taken. They were unsure if any other items were taken because the upstairs of the house had been ransacked. On June 9, Jacques Morial met with Det. Caillouet at the property room, where he positively identified some of the property that had been seized from 4234 St. Anthony as belonging to him, his mother, or his father, such property bearing his, his mother’s, or his father’s initials, and that had been taken from the house at 1101 Harrison Avenue.
 

 Ruben Carter testified that he owns and lives at 4234 St. Anthony, and he did not give anyone permission to enter the house on the day that the officers entered it and arrested Mr. Decquir. He stated that the officers entered the house through the back door and ordered him and Mr. Dec-quir to put their hands up and be quiet. He submitted documentation to show that he owned the property at 4234 St. Anthony. On cross-examination, Mr. Carter testified that he was the only person who lived at that address, and Mr. Decquir was •with him when the officers ^entered the house. He insisted that he found the bag on Mirabeau Avenue and took it home. He admitted that he looked inside the bag when he found it. He also admitted having prior convictions for simple burglary and armed robbery, but he testified these occurred thirty years earlier.
 

 The relator contends that the trial court erred by denying his motion to suppress the evidence because the State did not show that the officers had a legal basis to enter his house. The officers did not have a search warrant, and the relator argues that they had neither probable cause nor exigent circumstances to enter the house. He also asserts that the trial court erred by allowing the State to question him and elicit answers that went beyond the scope of the hearing. The State disputes both assertions, arguing that the officers’ entry was valid based upon their reasonable belief that -the house was abandoned, and the defendant cannot complain of the seizure of the bag because he denied that it was his and admitted at the hearing that he knew that the items inside did not belong to him. With respect to the second claim, the State asserts that questions concerning the bag and how he came into possession of it were germane to the issue of its suppression, and any questions eliciting information concerning his prior convictions would be admissible at trial only if he were to take the stand, in which case the State could question him on this matter at that time.
 

 The relator first argues that the trial court erred by denying his motion to suppress the evidence because the officers entered his house without a warrant; they did not have his permission to enter; and they did not have probable cause to believe there was contraband inside or exigent circumstances to justify a warrantless entry.
 

 | sThe State bears the burden of proving that the seizure of evidence in the absence of a warrant is lawful. La.Code Cr. Proc. art. 703 D. The officers entered the relator’s house without a warrant and without his consent to enter. Police officers may enter a house without a warrant if they have probable cause to believe
 
 *1096
 
 there is contraband inside and exigent circumstances that require immediate entry.
 
 State v. Jones,
 
 2002-1931 (La.App. 4 Cir. 11/6/02), 832 So.2d 382;
 
 State v. Page,
 
 95-2401 (La.App. 4 Cir. 8/21/96), 680 So.2d 700.
 
 Page
 
 described exigent circumstances as:
 

 exceptional circumstances which, when coupled with probable cause, justify an entry into a “protected” area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence.
 
 State v. Hathaway,
 
 411 So.2d 1074, 1079 (La.1982).
 

 Page,
 
 95-2401 at p. 10, 680 So.2d at 709. See also
 
 State v. Fournette,
 
 2008-0254 (La.App. 4 Cir. 7/2/08), 989 So.2d 199,
 
 writs denied,
 
 08-1815 (La.4/17/09), 6 So.3d 789, and 08-1824 (La.4/17/09), 6 So.3d 789. Here, the State presented no evidence to show either probable cause or exigent circumstances to justify the entry. However, the State argues that the officers’ entry was justified because they reasonably believed the residence was abandoned. The State notes that although a defendant is entitled to protection from unreasonable searches and seizures under both the Fourth Amendment to the United States Constitution and Article I § 5 of the Louisiana Constitution, these protections apply only if the defendant seeking to invoke them has a reasonable expectation of privacy. As noted by this Court in
 
 State v. McKinney,
 
 93-1425, pp. 10-11 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120, 1125-1126:
 

 A defendant may not assert the exclusionary rule unless his constitutional right to be free from unreasonable searches and seizures, as guaranteed by the United States and Louisiana Constitutions, has been violated. To establish such a violation, the defendant must first show that he had a legitimate expectation of privacy in the area searched.
 
 U.S. v. Ibarra,
 
 948 F.2d 903 (5th Cir. 1991). Whether a defendant has a constitutionally protected expectation of privacy involves a two part inquiry. A defendant must first show that he has a reasonable expectation of privacy in the area searched for the items seized. Second, a defendant must also show that society is prepared to accept the expectation of privacy as objectively reasonable.
 
 State v. Ragsdale,
 
 381 So.2d 492, 497 (La.1980);
 
 State v. Karston,
 
 588 So.2d 165 (La.App. 4th Cir.1991).
 

 In
 
 State v. Robertson,
 
 557 So.2d 315 (La.App. 4 Cir.1990), officers entered an apparently abandoned building after receiving complaints of drug sales from the building. Inside a front apartment, they found only trash and debris, which lent further credence to the belief that the building was abandoned. The officers found several people, including the defendant, and drugs in a back apartment. Although the officers later learned that the apartment had been rented for the purpose of card playing, there was no evidence that the apartment had been rented to any of the people in the apartment at the time of the officers’ entry or that any of them had a right to be in the apartment. In addition, there was no evidence that any of the doors were capable of being locked or secured, and access was apparently available to anyone. This court found that neither the defendant
 
 nor the legal tenant
 
 had a reasonable expectation of privacy in the apartment. Thus, the officers’ entry was lawful, as was the seizure of the drugs found in plain view.
 

 17Here, the State introduced the application for the arrest warrant for the relator, sworn to by Det. Caillouet, in which it was noted that the other officers were directed to an abandoned house. The State argues
 
 *1097
 
 that the relator did not present any evidence to dispute this characterization of the house as abandoned. It appears that the officers entertained a reasonable belief, in the aftermath of the general destruction in the area in the aftermath of Hurricane Katrina, that the residence was abandoned. Once inside the residence, they observed the black bag that was found to contain the stolen items. Both the relator and Mr. Decquir denied ownership of the bag. As such, they had abandoned the bag, and the officers were justified in seizing it. In addition, as noted by the State, the relator did not have a reasonable expectation of privacy in a bag that he admitted did not belong to him. The relator admitted that he found that bag and took it to his house. Therefore, since the officers’ entry into the apparently abandoned house was justified, they could lawfully seize the bag.
 

 Lastly, the relator argues that the court erred by allowing the State to ask questions that went beyond the scope of cross-examination at the suppression hearing. La.Code Cr. Proc. art. 703 E(l) provides in relevant part: “The defendant may testify in support of a motion to suppress -without being subject to examination on other matters.” The State may cross-examine a defendant only on those matters relevant to the suppression motion. See
 
 State v. Lukefahr,
 
 368 So.2d 661 (La.1978);
 
 State v. Veillon,
 
 98-575 (La.App. 3 Cir. 2/3/99), 737 So.2d 51. In
 
 Veillon,
 
 the State cross-examined the defendant at the suppression hearing concerning his prior convictions. The appellate court found that this evidence was relevant to the suppression hearing because it pertained to the defendant’s credibility. The court |8also noted that this evidence could not be used at trial except for impeachment purposes and only if the defendant took the stand.
 

 Here, the relator refers to questions concerning how he found the bag containing the stolen items. Contrary to his argument, this evidence was relevant to the issue before the court, that is, whether the evidence should have been suppressed because the relator had a legitimate privacy right to it. In addition, the State’s question concerning his prior conviction was relevant to the issue of his credibility, which he put at issue when he chose to testify at the hearing. As noted by the State, this evidence will not be admissible at trial unless the relator chooses to testify, at which time the State may question him concerning his prior convictions. This claim has no merit.
 

 A trial court is vested with great discretion when ruling on motion to suppress.
 
 State v. Scull,
 
 93-2360, p. 9 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239, 1245. For the foregoing reasons, we find that the trial court did not abuse that discretion in denying the relator’s Motion to Suppress.
 

 WRIT DENIED.