588 So.2d 1343 (1991)
STATE of Louisiana, Appellee,
v.
Carl Wayne WIMBERLY, Jr., Appellant.
No. 22886-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
*1344 Stephen A. Glassell, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Paul J. Carmouche, Dist. Atty., Powell A. Layton, Tommy J. Johnson, Asst. Dist. Attys., for appellee.
Before NORRIS, HIGHTOWER and VICTORY, JJ.
VICTORY, Judge.
This appeal arises out of defendant's convictions of possession of cocaine with intent to distribute, and possession of cocaine in an amount greater than 200 grams [LSA-R.S. 40:967A(1) and LSA-R.S. 40:967F(1)(b) respectively]. Defendant pled guilty, reserving his right to appeal the trial court's *1345 denial of his motions to suppress. We affirm.

FACTS
On June 15, 1989, a confidential informant (CI) telephoned State Trooper Henry Whitehorn (narcotics investigator) stating the defendant, Carl Wayne Wimberly, Jr., had purchased a half kilogram of cocaine for purposes of reselling it and had shown it to him personally. The CI stated that the defendant kept the cocaine in his apartment, number 112 at the Hay Stack Apartments at 7000 Fern Avenue in Shreveport. The CI further told Trooper Whitehorn that the defendant's vehicles included a brown 1981 Cadillac Sedan, a 1976 or 1977 green Lincoln Town Car and a brown Chevrolet Chevette with a black "bra" (front protective cover) on the front of the car. He told police that each day the defendant would leave his apartment around 10:30 a.m., usually armed with a large caliber handgun, and sell cocaine in the nearby Cedar Grove area, and would do so the following day, June 16, 1989.
Police verified with the apartment manager that defendant did live in apartment number 112, and discovered that cars matching the CI's description were parked near the apartment. The police determined the Chevrolet Chevette was in fact a Chevrolet Cavalier, parked near the apartment. It was brown and had a bra on the front. Whitehorn determined that Jacqueline Lee also lived in the defendant's apartment.
On June 16, 1989 at about 9:00 a.m. local, state, and federal law enforcement officers began surveillance near the defendant's apartment. At approximately 11:00 a.m. they observed a man, later identified as the defendant, leave the apartment building empty-handed, get into the brown Chevrolet Cavalier, and turn onto 70th Street heading in the direction of Cedar Grove. Trooper Bruce Vanderhoeven, parked some distance away in a marked patrol car, was instructed by Whitehorn to pull the car over and attempt to ascertain the driver's identity. When Vanderhoeven pulled behind defendant and turned on his flashing lights, the defendant sped away with Vanderhoeven following close behind.
After a five to ten minute high speed chase, the car was stopped on Liberty Street in the Cedar Grove area. Defendant got out of the car and officers observed, in plain view on the driver's side floorboard, a small clear plastic bag containing a substance that appeared to be cocaine. The substance field tested positive as cocaine and the defendant was placed under arrest for possession of cocaine and for traffic violations resulting from the chase.
After the defendant refused to allow a consensual search of his apartment, Whitehorn instructed him that they would attempt to obtain a search warrant. While being placed in a transport vehicle, defendant shouted to a person in a group gathered near the arrest scene to call a telephone number beginning with the prefix 861 and tell the person that he had been arrested for possession of cocaine. Whitehorn, having knowledge that at least one other person lived in the apartment, that only a small amount of cocaine had been found in defendant's possession, and that the CI had seen defendant in possession of much more cocaine, thought the defendant was trying to effect a destruction of evidence. He relayed this information to an assistant district attorney, who instructed him to attempt to secure the apartment. Whitehorn then radioed the officers who were still surveilling the apartment to secure the apartment.
The defendant's girlfriend, Jacqueline Lee, answered the door. She was told by police that defendant had been arrested and that they wanted to check the apartment to see if others were inside who could destroy evidence. Despite her statement that no one else was in the apartment, officers made a cursory check for other individuals. Inside, they saw in plain view a quantity of suspected cocaine, a set of scales and plastic bags similar to the ones found in the defendant's possession.
Whitehorn photographed the plain view evidence and based on his affidavit and photographs, obtained a search warrant two hours later. A search ensued and various *1346 drug-related items were found in the apartment, including additional plastic bags containing what was later determined to be cocaine, a glass beaker containing 72 grams of cocaine, and an ice cream box with 52 packages of crack, containing 3½ grams each. The total weight of cocaine found in the apartment was 350 grams, worth about $30,000. The defendant was then also charged with possession of cocaine in an amount greater than 200 grams.
On appeal defendant contends the trial court erred in finding (1) that the law enforcement officers had legally stopped his car, (2) that the police officers were justified in entering his apartment prior to the issuance of a search warrant, and (3) that the search warrant was valid.[1]

THE CAR STOP
Defendant first contends that law enforcement officers had no reasonable basis to stop his car.
The present facts bear a strikingly close resemblance to the facts of Alabama v. White, ___ U.S. ___, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), recently decided by the United States Supreme Court. There, an anonymous caller telephoned police stating that Vanessa White would leave apartment # 235-C at the Lynwood Terrace Apartments at a specified time in a brown Plymouth station wagon, with cocaine in a brown attaché case, and would go to Dobey's Motel. Officers proceeded to the apartments, and at the given time saw the defendant, empty-handed, leave the building and enter the described car. They followed the car as it drove the most direct route to Dobey's Motel. Upon reaching the road on which the motel was located, the officers pulled the car over. Defendant consented to a search and cocaine was found in the attaché. The defendant's conviction was upheld by the Supreme Court which stated there was reasonable cause for the investigatory stop.
Similarly, in the instant case, the CI expressed personal knowledge of seeing a half-kilogram of cocaine in the defendant's possession, and gave defendant's name, the apartment number, the description of the three cars, and stated when he would leave the apartment and where he would go with the drugs. It was reasonable for the police to believe the defendant had the cocaine in his apartment or in one of the cars he used. Whitehorn stated that the CI had previously provided reliable information to him.
The information supplied by the CI was corroborated by the observations and investigations of the officers, and under the rationale of Alabama v. White, created a reasonable suspicion for the police to make an investigatory stop authorized by LSA-C.Cr.P. Art. 215.1. The present case is even stronger than Alabama v. White because the police here were dealing with a known reliable informant, not an anonymous caller. This assignment has no merit.

INITIAL APARTMENT ENTRY
The defendant next contends the trial court erred in finding law enforcement officers were justified in entering his apartment, for purposes of securing it, without a search warrant.
There is no evidence that police officers considered searching defendant's apartment without a warrant until the defendant, after his arrest and while being placed into a transport vehicle, yelled to a person in the crowd to call a certain telephone number and inform the person answering that the defendant had been arrested for possession of cocaine. Whitehorn knew someone else lived in the apartment and had been told by the CI that the defendant kept cocaine in his apartment. Based on the large quantity of cocaine that the CI had actually seen the day before and the small amount found with the defendant at the time of his arrest, he could reasonably believe the defendant was trying to alert someone to destroy the remaining cocaine in his apartment. Only at this point did Whitehorn obtain advice on and give *1347 instructions to secure the apartment pending issuance of a search warrant.
The police certainly had the right to knock on defendant's apartment door to see if anyone was inside. When defendant's girlfriend answered the door and was told of defendant's arrest, we believe the police acted reasonably in making a cursory walk through the apartment to make sure no one else was inside who could destroy possible evidence, in spite of the girlfriend's statement that no one else was there. The police are not obligated to accept Ms. Lee's word under these circumstances. Anyone else present in the apartment could have destroyed the remaining cocaine by flushing it down the commode in a matter of seconds.
While making the cursory check for individuals, officers discovered drugs and drug-related items on the kitchen countertop and other areas in plain view. After determining no one else was present, officers, without moving anything, took photographs of the suspected contraband and left the apartment until a search warrant was obtained.
The Fourth Amendment prohibits governmental intrusions into a private dwelling without a warrant supported by probable cause, subject only to a few carefully delineated exceptions. Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). Searches and seizures inside a residence without a warrant are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
Absent exigent circumstances, a house may not be entered without a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The need to preserve evidence that may be lost or destroyed if a search is delayed, has long been recognized as an exigent circumstance. U.S. v. Hultgren, 713 F.2d 79 (5th Cir.1983). This need may be particularly compelling where narcotics are involved, for "narcotics can be easily and quickly destroyed while a search is progressing." United States v. Johnson, 802 F.2d 1459, 1462 (D.C.Cir.1986). In United States v. Socey, 846 F.2d 1439 (D.C.Cir.1988), the Court noted that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic. Before such an exigency is present, according to United States v. Napue, 834 F.2d 1311 (7th Cir. 1987), the police must have a reasonable basis for believing that there was someone in the house who will likely destroy the evidence.
The police could reasonably believe from the defendant's anxiousness that someone at a specified phone number be advised of his arrest for drugs, coming right after he was told by police that they were going to get a search warrant for his apartment, that defendant was trying to get word to someone in the apartment to destroy or remove the remaining cocaine. The police properly secured the apartment and its contents, checking to make sure no one else was present who could destroy evidence.
We find the officers acted reasonably under the exigent circumstances presented. This assignment of error is therefore without merit.

SEARCH WARRANT
Lastly, the defendant contends the trial court erred in denying his motion to suppress the search warrant, claiming inter alia, the CI was not shown to be reliable because some of his information was not based on his personal knowledge. Specifically, defendant argues that since the stop of defendant's vehicle was without reasonable suspicion, the drugs in plain view should not have been used as part of the affidavit. Further, he contends that since the cursory search of the apartment for other persons was illegal, the drugs and paraphernalia found inside the apartment should not have been used as a basis for obtaining the search warrant.
We disagree. Having reviewed the affidavit in detail and the pertinent law, we find the affidavit indicates that most of the CI's information is based on his personal knowledge and is accurate. His reliability *1348 is affirmatively noted in the affidavit as "verified by affiant through independent investigation." We have ruled previously in this opinion that the stop of defendant's vehicle was legal. A portion of the drugs known to be in his possession were in plain view in the vehicle. The defendant's statement during arrest could reasonably be construed as an attempt to warn someone at his apartment to move or destroy the drugs there. Even if the facts in the affidavit relating to the drugs seen in the apartment in plain view were deleted, the affidavit clearly establishes probable cause to search the apartment and/or the remaining vehicles located there. This assignment has no merit.

DEFENDANT'S ASSIGNMENTS OF ERROR
In addition to errors assigned by appellate counsel, defendant filed others. However, as recently stated by the court, a defendant cannot be both represented and representative, that is, he cannot have counsel, and also act as his own counsel. State v. Gene, 587 So.2d 18 (La.App.2d Cir.1991); State v. Palinkas, 587 So.2d 27 (La.App.2d Cir.1991). Therefore, defendant's assignments of error are not considered.

DECREE
For the above and foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] An additional assignment of error filed by counsel was expressly abandoned, and thus is not considered here.