677 So.2d 487 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Andrew Patrick KILLIAN, Defendant-Appellant.
No. CR95-826.
Court of Appeal of Louisiana, Third Circuit.
May 8, 1996.
*488 Michael Harson, Lafayette, for State of Louisiana.
David Charles Willard, Lafayette, for Andrew Patrick Killian.
Andrew Patrick Killian, pro se.
Before WOODARD, PETERS and SULLIVAN, JJ.
WOODARD, Judge.
The defendant, Andrew Killian, seeks a Crosby appeal of his conviction for possession of marijuana with intent to distribute.

PROCEDURAL HISTORY
The defendant was originally charged with two counts of narcotics offenses arising out of his sale of marijuana from his home. After his arrest, he filed a motion to suppress, which was heard on June 1, 1994. When the trial court denied the motion, the defendant entered a plea of guilty to possession of marijuana with intent to distribute pursuant to a plea bargain agreement in which the other narcotics charge was dismissed, reserving his right to appeal the denial of the motion to suppress. A presentence investigation report was ordered, and the defendant was recommended for the IMPACT Program of intensive incarceration. On August 29, *489 1994, the defendant was sentenced to two years at hard labor with a recommendation that he be considered for the IMPACT Program.
The defendant initially sought review by application for supervisory writs, but this court denied the writ application, noting that the defendant's relief was by appeal. State v. Killian, K94-1225 (La.App. 3 Cir. 11/16/94).
ERRORS PATENT
A review of the record reveals a number of errors patent. First, the defendant's conviction for possession of marijuana with intent to distribute carries a minimum statutory sentence of five years at hard labor; however, the defendant was sentenced to an illegally lenient sentence of two years at hard labor. Although La.Code Crim.P. art. 882 grants the courts of appeal the power to correct illegal sentences, the Louisiana Supreme Court has ruled in State v. Fraser, 484 So.2d 122 (La.1986), that an appellate court may not amend or set aside an illegally lenient sentence on its own motion when the defendant alone has appealed and the prosecutor has not sought review of the sentence. Such action would be detrimental to the appellant, and his position should not be worsened by his having appealed. This court has followed this mandate of not correcting illegally lenient sentences sua sponte. State v. Mitchell, 586 So.2d 701 (La.App. 3 Cir.1991). Accordingly, this court will not correct this error patent.
The trial court has also failed to inform the defendant of the three-year limitation for filing a post conviction relief application and to give the defendant credit for time served in actual custody prior to the imposition of sentence. Resentencing, however, is not required. The trial court will be instructed to inform the defendant of the time limitations of La.Code Crim.P. art. 930.8 and to amend the sentencing commitment to give the defendant credit for time served as provided by La.Code Crim.P. arts. 880, 882(A). State v. Jones, 607 So.2d 828 (La.App. 1 Cir.1992), writ denied, 612 So.2d 79 (La.1993).

FACTS
Trooper Hal Hutchinson of the Louisiana State Police Region II Narcotics section received information from a confidential informant that marijuana was being sold from a residence at 128 Mildred Street in Lafayette. This confidential informant had worked with Trooper Hutchinson on two or three cases that had led to arrests, and the trooper found the informant to be reliable and accurate.
On May 10, 1993, the confidential informant made a controlled buy with marked money of a quarter-ounce bag of marijuana from "Andy" at the residence on Mildred Street. When he returned from the buy, the confidential informant told the troopers that he saw a large amount of marijuana in the residence, but that from speaking with the residents, the purchase of the remaining marijuana was imminent. In fact, he said that another buyer was there at the time he, the confidential informant, was making his purchase.
Concerned that the narcotics would be sold and disseminated into the community, and that the marked buy money would be lost, Trooper Hutchinson decided to act quickly. He summoned assistance from other troopers, briefed them on the situation, and within thirty minutes of the original purchase secured the defendant's home.
Trooper Hutchinson testified that his intent was to secure the home until a search warrant was obtained, unless the occupants cooperated and a search warrant would be unnecessary. When the police arrived at the defendant's home, Trooper Hutchinson went to the front door, knocked, and announced "state police." He could see into the living room through the glass panes on the front door, and he noticed two marijuana cigarettes and a paraphernalia pipe on the coffee table. At his announcement, the trooper could also see people scurrying into rooms and closing the doors behind them. When the police entered the rooms, they found the defendant with his girlfriend in one bedroom and the defendant's roommate in another bedroom.
The first thing Trooper Hutchinson did was to handcuff the defendant and secure him until they could make sure that there *490 were no weapons in the house. As the trooper was handcuffing the defendant, and before he asked the defendant any questions, the defendant spontaneously announced, "My girlfriend has nothing to do with this. If you let her go, I'll help you." Trooper Hutchinson informed the defendant that the police would make a decision later about who would get charged, and he then advised the defendant of his Miranda rights. The defendant continued to offer to cooperate if his girlfriend were let go. After the police asked the defendant if he wanted to cooperate, the defendant agreed and showed the police where he had hidden fourteen (14) plastic bags of marijuana and the marked buy money. The state police seized the evidence and photographed the marijuana cigarettes and paraphernalia lying on the coffee table in the living room. The defendant and his roommate were taken to the police headquarters for processing, and the defendant's girlfriend was later allowed to leave.
The defendant gave a written statement in which he named the person from whom he purchased the marijuana. At the hearing on the motion to suppress, Trooper Hutchinson and Trooper B.C. "Buzzy" Trahan testified that the defendant had appeared to understand his Miranda rights and had voluntarily cooperated.
On the other hand, the defendant testified that he was intimidated and scared by the police who came into his house with their guns pointed at him and his girlfriend. The defendant also claimed that he was intimidated by the police telling him that he would get ten to sixty years in prison for his crimes. According to the defendant, he and his girlfriend had been at his residence for no more than five to ten minutes before the police arrived. The defendant testified that he was not forced to show the police where he hid his marijuana, but his main concern was to prevent damage to his property from a ransacking search for narcotics. The defendant also testified that there was a burlap sack tacked over the windowpanes in the front door; therefore, no one could have seen inside the living room. When shown his signature on the written statement, the defendant explained that he was scared, rushed, and that he had not read the statement of rights printed on the form.
The defendant's girlfriend testified that she and the defendant had been over at her house until five minutes before the police arrived. She also testified that the defendant told the police that she knew nothing about the marijuana and that he would cooperate if she were let go. The girlfriend admitted that the front door was like a French door with the top half of it glass, but claimed that a burlap sack had been placed over the window and that no one could see inside very clearly.
At the conclusion of the hearing, the trial judge ruled that exigent circumstances required the police to act without first obtaining a search warrant. The defendant's motion to suppress was denied.

ARGUMENT
The defendant argues that the police were not faced with exigent circumstances requiring that they act without first obtaining a search warrant.
The Fourth Amendment prohibits governmental intrusions into a private dwelling without first obtaining a warrant supported by probable cause, subject only to a few carefully delineated exceptions. Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). Searches and seizures inside a residence without a warrant are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Absent exigent circumstances, a house may not be entered without a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The burden is on the government to show that the search falls within one of the exceptional situations. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Tatum, 466 So.2d 29 (La. 1985). When the constitutionality of a warrantless search is at issue on a motion to suppress, as here, the state bears the burden of affirmatively showing that it was justified under one of the exceptions to the warrant requirement. State v. Raheem, 464 So.2d 293 (La.1985).
*491 Police entry into a residence under exigent circumstances is a recognized exception to the warrant requirement. State v. Hathaway, 411 So.2d 1074 (La.1982). Exigent circumstances are exceptional circumstances which, coupled with probable cause, justify entry into a protected area that would be unlawful in the absence of those exceptional circumstances. Id. The destruction of evidence is considered an exigent circumstance. State v. Hall, 555 So.2d 495 (La.App. 4 Cir.1989), writ denied, 577 So.2d 44 (La. 1991). The rationale for this exception was stated in State v. Wimberly, 588 So.2d 1343, 1347 (La.App. 2 Cir.1991), writ denied, 592 So.2d 1333 (La.1992):
The need to preserve evidence that may be lost or destroyed if a search is delayed, has long been recognized as an exigent circumstance. This need may be particularly compelling where narcotics are involved, for "narcotics can be easily and quickly destroyed while a search is progressing."... [E]fforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic. Before such an exigency is present, ... the police must have a reasonable basis for believing that there was someone in the house who will likely destroy the evidence. [Citations omitted.]
In Wimberly, the police had received information from a reliable confidential informant who had seen the defendant with a large quantity of cocaine in his apartment, and who said that the defendant would leave his apartment in one of three described cars after 10:00 a.m. to go to the Cedar Grove area of Shreveport to sell cocaine. The police set up surveillance the next day, confirmed the information given by the informant, and stopped the defendant when he entered the Cedar Grove area. A plastic bag containing cocaine was plainly visible in the defendant's car. As the defendant was being handcuffed, he hollered to the bystanders to call his apartment and tell whoever answered that he had been arrested for possession of cocaine.
The police, fearing destruction of evidence by the defendant's girlfriend, who lived with him, immediately went to the apartment and secured it. Upon arriving at the apartment, they found that the defendant's girlfriend was there. As they walked through the apartment to make sure no one was hiding, they saw a large quantity of cocaine and paraphernalia in plain view. Because the defendant did not give his consent for a search, the police obtained a search warrant. The entry into the apartment was upheld based upon exigent circumstances.
State v. Diaz-Rubio, 615 So.2d 1124, 1127 (La.App. 5 Cir.1993), writ denied, 93-1010 (La. 9/30/94); 642 So.2d 866, is also very similar to this one:
At the time the officers entered defendant's apartment the record reveals that they had information from a CI, who had been in defendant's apartment the day before, that he had seen a quantity of cocaine in the apartment. He had also overheard a telephone conversation between defendant and an unidentified caller in which the defendant advised the caller that he would be making deliveries on the next day between 9:00 and 12:00 p.m. Based on this information the officers conducted a surveillance the following day and observed the defendant engage in what appeared to be a drug transaction at a nearby convenience store, corroborating the CI. Upon returning from the Time Saver, defendant and Saacks were walking to their apartment, with Detective Torres in plain clothes following them at some distance, when Detective Torres heard defendant tell Saacks that Torres was a policeman. The pair began to walk more quickly toward the apartment and Detective Torres requested that they stop. Other officers appeared, wearing raid jackets identifying them as police officers, and also requested that the couple stop. They did not stop, but hurried inside the apartment. At that point, the officers had probable cause to believe that there was contraband inside the apartment and that it would be destroyed before they could secure a search warrant. Therefore, the warrantless intrusion into the defendant's apartment, where the contraband was visible, in plain view, was justified....
*492 See also State v. Williams, 619 So.2d 650 (La.App. 4 Cir.1993) for similar factual issues and legal analysis.
In the case under review, the state police had been informed that the defendant had a large quantity of marijuana in his house, and that he was planning to sell it to others soon after the confidential informant left. Unable to secure a search warrant in time, the state police decided to act to prevent loss of the narcotics and of the marked buy money. When Trooper Hutchinson stood at the front door, he could see through the glass pane of the door. The trooper plainly viewed two partially burnt marijuana cigarettes and paraphernalia in the form of a pipe on the coffee table in the living room. Under the "plain view" doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). In the present case, the trooper was standing at the front door of the defendant's home and viewed objects through a window that he recognized as contraband.
The trooper testified that he intended to secure the home and the contents until a search warrant was obtained, unless the defendant consented to a search. One exception to the warrant requirement is a search that is conducted pursuant to consent. State v. Owen, 453 So.2d 1202 (La.1984). The issue of whether the defendant consented is a question of fact to be determined under the totality of the facts and circumstances of each case. State v. David, 425 So.2d 1241 (La.1983), cert. denied, 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986). The state bears the burden of proving that the defendant's consent was freely and voluntarily given. State v. Yarbrough, 418 So.2d 503 (La.1982); State v. Havard, 469 So.2d 1200 (La.App. 3 Cir.1985). Because the finding of consent to search is a factual determination, the trial judge's ruling is entitled to great weight on appellate review. State v. Ossey, 446 So.2d 280 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984).
At the time state police forcibly entered the defendant's home, the troopers had probable cause to do so to prevent loss of the marijuana and the marked money used by the confidential informant to purchase the marijuana. Once the police entered the home, the defendant spontaneously and without any questioning or provocation by the police agreed to cooperate if his girlfriend were allowed to leave. Although the defendant later claimed that he was intimidated and scared into cooperating with the police, the defendant acknowledged that he was informed of his Miranda rights and that he was not forced to show the state police where he had hidden his "stash" of drugs and money. Based upon the evidence presented, the trial court properly denied the defendant's motion to suppress. The state police had probable cause to believe marijuana was present in the defendant's home and, further, that the police were faced with exigent circumstances forcing them to secure the defendant's home before obtaining a search warrant.

CONCLUSION
Therefore, for the reasons given in this opinion, we uphold the ruling of the trial court and affirm the defendant's conviction. The defendant's sentence is illegally lenient but this court cannot act to correct it. We remand the case with instructions for the district court to amend the commitment and minute entry of the defendant's sentence to reflect credit given for time served; we also direct the district court to inform the defendant of the time limitations of La.Code Crim.P. art. 930.8 by sending him appropriate written notice within ten days of the rendition of this opinion and to then file written proof in the record of the proceedings that the defendant received the notice.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.