726 So.2d 994 (1998)
STATE of Louisiana
v.
Theodore M. WATKINS & Larry Jones.
No. 98-K-2578
Court of Appeal of Louisiana, Fourth Circuit.
December 16, 1998.
*995 James C. Lawrence, Jr., Lane R. Trippe, Lawrence & Olinde, New Orleans, La, for Theodore Watkins.
Jeffrey L. Smith, New Orleans, La, for Larry Jones.
Court composed of Judge WILLIAM H. BYRNES III, Judge STEVEN R. PLOTKIN, Judge PATRICIA RIVET MURRAY.
PLOTKIN, Judge.
On May 18, 1998, the State filed a bill of information charging Larry Jones and Theodore Watkins, relators herein, with one count each of possession of cocaine with the intent to distribute and possession of heroin. In addition, Watkins was charged with violating La. R.S. 14:95(E), relative to possession of a firearm while in possession of narcotics. The defendants were arraigned and entered not guilty pleas on May 29, 1998. A hearing on motions commenced on July 15, 1998 and concluded on August 5, 1998 at which time the trial court denied the motion to suppress evidence and statements. The defendants objected and gave notice of intent to take writs. This timely writ application followed.

STATEMENT OF THE FACTS:
At the July 15, 1998 hearing the sole witness was Officer Clarence Gillard. He testified that, on February 4, 1998, he was assigned to the Fifth District. He and his partner responded to a call from the police dispatcher stating that two black males were selling narcotics in the 2600 block of North Rocheblave Street. The dispatcher provided clothing descriptions of the two suspects, one of whom was wearing a red long sleeve shirt and the other was wearing a white and black long sleeve shirt. The subjects were further described as standing next to a white Oldsmobile 98 parked in front of 2624 N. Rocheblave. Officer Gillard testified that they had made a few narcotics arrests in the area.
As Officer Gillard and his partner pulled up in front of 2624 N. Rocheblave, they observed two men matching the descriptions provided by the dispatcher. The men, the defendants, were walking up the steps of the front porch of the residence along with a third man, later identified as Roosevelt Walker. When the police officers exited their vehicle, Watkins ran into the house; Gillard's partner, Detective Rousseve, gave chase while Officer Watkins stopped Jones and Walker. As Watkins ran into the house, the officers saw him reach into his front waistband. Once inside the house, Walker discarded a gun and continued running toward the back of the house. When he reached the bathroom, Watkins discarded a small plastic bag. Detective Rousseve retrieved the bag, which contained six tin foil packages which contained what appeared to be heroin. While Watkins was being pursued by Detective Rousseve, Officer Gillard ordered Jones and Walker to lie down on the porch. They did so, but Jones also threw a small plastic bag off the side of the porch into the alley. The plastic bag was recovered and also appeared to contain heroin in foilwrapped packages as well as twenty pieces of individually-wrapped rocks of cocaine and twenty small plastic bags of powdered cocaine. Officer Gillard placed Jones under arrest, and Detective Rousseve placed Watkins under arrest. Roosevelt Walker was not arrested for any of the drugs found, but was booked pursuant to a municipal attachment.
The officers gave both defendants their Miranda rights at the scene and at the station. *996 The defendants were also advised that they should state whether they had any contraband on their persons at which time Watkins disclosed that he had marijuana in his jacket. Detective Rousseve searched Jones and found a plastic bag containing twenty pieces of crack cocaine; Jones indicated he had forgotten it was there.
On cross-examination, Officer Gillard testified that Watkins lived at the house on North Rocheblave. The officers knew neither defendant prior to his arrest. Officer Gillard testified that the officers saw no suspicious activity by either man except that they matched the descriptions provided by the dispatcher and that Watkins ran inside the house when the police appeared. Officer Gillard stated that, while the officers were attired in plainclothes in an unmarked police car, they did have their badges, guns, and radios showing when they exited the car. The car itself was a black Crown Victoria, which, according to Officer Gillard, in that neighborhood would be easily recognized as a police vehicle.
On further cross-examination, Officer Gillard stated that neither defendant was next to the Oldsmobile but that there was a white Oldsmobile parked in front of the residence.
Detective Dwight Rousseve was the sole witness at the hearing on August 5, 1998. His testimony substantially corroborated that of Office Gillard. There were a few discrepancies. Detective Rousseve stated that the third man was Roosevelt Bailey, not Roosevelt Walker. Also, the additional cocaine found at the station was recovered from defendant Watkins, not Jones.

DISCUSSION
After hearing Detective Rousseve testify, the State and defense made arguments to the trial court. The defense argued that there was an insufficient basis for a stop of the defendants, and in particular, an insufficient basis to enter the residence. The State argued that the totality of the circumstances, i.e. a corroborated anonymous tip, an area known for drug activity, and the flight of Watkins, was sufficient to justify an investigatory stop. Therefore, according to the State, the property abandoned was properly seized. The trial court accepted the State's argument that there was sufficient corroboration to justify an investigatory stop, but rejected any abandonment argument, and refused to suppress the evidence.
In their writ application, the relators first focus on the warrantless entry into the defendant's residence and argue that the trial court incorrectly applied a reasonable suspicion to support an investigatory stop standard instead of the higher "probable cause" standard required to support a warrantless entry into a house.
In State v. Page, 95-2401, p. 10 (La.App. 4th Cir.8/21/96), 680 So.2d 700, 709, writ denied 96-2352 (La.2/21/97), 688 So.2d 522, this court discussed the warrantless entry into a protected area:
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320, 1326 (La.1979), cert. den., Rudolph v. Louisiana, 454 U.S. 1142, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a "protected" area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
See also State v. Tate, 623 So.2d 908 (La.App. 4th Cir.1993), writ denied 629 So.2d 1126 (La.1993).
"Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed a crime." State v. Wilson, 467 So.2d 503 (La.1985), cert. denied Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). See also State v. Johnson, 94-1170 (La.App. 4th Cir.8/23/95), 660 So.2d 942, writ denied State v. Johnson, 95-2331 (La.2/2/96), 666 So.2d 1092, and *997 State v. Dibartolo, 95-3044 (La.2/2/96), 666 So.2d 1105.
In State v. Blue, 97-2699 (La.App. 4th Cir. 1/7/97), 705 So.2d 1242, writ denied 98-0340 (La.3/27/98), 716 So.2d 887, this Court was confronted with a situation very similar to the instant case. There, police officers received a tip from a reliable confidential informant that heroin was being sold from an apartment located in an area known for narcotics activity. The C.I. provided detailed clothing descriptions of the two men selling the drugs, identifying one of them as "Blue" and the other as "Chris". The C.I. indicated the men were selling drugs at that moment. Approximately ten minutes after receiving the tip, the officers drove to the apartment and noticed a man, whose clothing matched the description provided by the C.I., walk out of the apartment onto a porch. When the man, later identified as the defendant Samuel Blue, saw the unmarked but well-known police car, he appeared surprised, turned, and went back into the apartment. The officers followed Blue into the apartment and into a bathroom, where they saw him empty the contents of his hand into the toilet, which he attempted to flush. The officers were able to retrieve drugs from the toilet as well as discovering drugs in plain view on the floor of the bathroom. The trial court suppressed the evidence, finding that the officers did not have probable cause to enter the house after the defendant.
This Court affirmed, noting that probable cause, in addition to exigent circumstances, was necessary to justify the officer's entry into the residence. The Court did note that "[a]lthough these circumstances would have given the officers reasonable suspicion to detain the defendant if he had remained outside, it does not appear that they supplied probable cause to arrest him, which the officers needed to follow him inside the apartment." Blue, p. 7, 705 So.2d 1246.
The Court in Blue distinguished State v. Hathaway, 411 So.2d 1074, which presented similar facts. In Hathaway, a reliable informant told the police that one Joseph Woods, known to the officers as a narcotic user, was shortly going to make a narcotics delivery in the 1200 block of S. White. The officers proceeded to the area and saw Woods at the intersection of Broad and Clio, talking to someone while looking around as if to see if he was being watched. The officers then moved their surveillance to the 1200 block of S.White Street, where they observed Woods and two other men. One of the other men was the defendant, who was unknown to the officers, and Vincent Vantress whom the officers knew to be involved in narcotics. The officers exited their vehicle and identified themselves as police officers by yelling, "Police officers, freeze." Hathaway, 411 So.2d at 1076. Vantress and the defendant ran into a residence with the police in pursuit. Inside the house the defendant had a gun in his hand, which he threw down at the police officers' order. The defendant subsequently entered a Crosby plea to being a convicted felon in possession of a firearm. In the appeal, the Supreme Court affirmed the trial court's denial of the motion to suppress evidence. The court discussed the need for probable cause to arrest in order for the police to enter the residence. The court noted, however, that probable cause could arise as to either Hathaway or Vantress because they ran into the house together. Hathaway, at 1078. The court then found that the reliable informant's tip, coupled with the furtive movements of Woods, and the fact that Woods met with Vantress, a known narcotic user, provided reasonable suspicion to conduct an investigatory stop and detention of Woods and Vantress pursuant to La. C.Cr.P. art. 215.1. The court then concluded that "the flight of Vantress and Hathaway was sufficient to ripen the reasonable suspicion to detain into probable cause to arrest Vantress." Hathaway, 411 So.2d at 1079.
This Court in Blue distinguished Hathaway because the defendant in Blue did not run into the apartment, but rather simply turned and reentered it. Blue also distinguished State v. Killian, 95-826 (La.App. 3rd Cir. 5/8/96), 677 So.2d 487, writ denied 96-1461 (La.11/8/96), 683 So.2d 266, because in Killian there was a controlled buy from the residence. The Court also distinguished State v. Morace, 446 So.2d 1274 (La.App. 2nd Cir.1984), where the police had received a tip that the defendant was riding around in a car *998 with a box of marijuana. The officers immediately went to the area and saw the defendant pull into the driveway of a known drug dealer. The officers stopped the defendant, ordered him out of the car, and saw contraband in plain view inside the car.
This case falls somewhere between Blue and Hathaway. As in Hathaway, Watkins fled into the residence; he did not merely turn and enter. In contrast, however, the police officers had no prior information about the defendants or the third man walking up the steps with them. Furthermore, in both Blue and Hathaway, the police were acting on a tip from a reliable confidential informant, not an anonymous tip. Therefore, it appears the anonymous tip coupled with Watkins' flight into the house did not give rise to probable cause for the police officer to enter the residence.
Nevertheless, the trial court may not have erred in denying the motion to suppress. In Blue the Court specifically noted that the tip from the reliable confidential informant, coupled with the corroboration of the clothing description and the defendant's startled look, was sufficient to support an investigatory stop of the defendant. In the instant case, Officer Gillard detained the defendant Jones on the porch of the house while Detective Rousseve followed Watkins into the house. Jones discarded contraband into the alleyway during his detention. Once Jones threw down the contraband, there was clearly probable cause for his arrest. Furthermore, the officers at that point would have had probable cause upon which to act with regard to Watkins because the initial tip involved both Jones and Watkins. Therefore, even if Detective Gillard had not followed Watkins into the house, he could have done so almost immediately to affect the arrest of Watkins; exigent circumstances would arise from the fact that Watkins had already fled from the police. This analysis presupposes that there was reasonable suspicion to conduct an investigatory stop.
The relators argue that reasonable suspicion did not exist because the police had only an anonymous tip. Very recently, the Louisiana Supreme Court considered an anonymous tip and the necessary level of corroboration for an investigatory stop in State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, 1998 WL 727417. In Robertson, the police received an anonymous tip from a concerned citizen via the "ATF" Hotline. The citizen described an individual known as "Will," who drove a dark green Pontiac. The citizen stated that Will, who was described in detail, was involved in narcotics sales in the Magnolia Housing Development. The citizen informed the police where Will's car could be found when he was not using it to deliver narcotics. Based on this tip, police officers drove to the location where the citizen indicated Will's car would be routinely parked. A vehicle matching the description was there. While the officers watched, the vehicle was driven away. The officers followed, without interfering, until the vehicle was parked and the driver exited. At that point, the police approached and asked the driver his name. He identified himself as William Robertson. The officers observed that the defendant matched the description given in the tip. They then detained the defendant and his vehicle while a canine detection unit responded. After the dog alerted on the vehicle, it was searched and narcotics seized. The trial court subsequently denied the motion to suppress; this Court affirmed in an unpublished opinion (Judge Murray dissenting). State v. Robertson, 97-1950 (La.App. 4th Cir. 11/5/97), 701 So.2d 272. The Louisiana Supreme Court reversed. The court applied the totality of the circumstances test set forth in Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), stating:
Although reasonable suspicion is a less demanding standard than probable cause, "the content of information possessed by police and its degree of reliability" remain significant factors in the analysis. Id. at 330[, 110 S.Ct. 2412].... Of particular significance to the Court [in White] was the informant's prediction of White's "future behavior." ... Emphasizing the insider quality of predictive information, the Court concluded that verification of the "innocent" aspects of the anonymous tip gave police reason to believe that the allegations of criminal activity was probably true as well.

*999 Against this legal landscape, we must determine whether the anonymous tip, together with subsequent corroboration by police officers, provided reasonable suspicion for the investigatory detention of the defendant. As noted above, in assessing reasonable suspicion for a stop pursuant to an anonymous tip, the White court stressed corroboration and predictiveness. In the instant case, it is true that the officers were able to corroborate certain aspects of the anonymous tip, including the defendant's name, his physical description and the location of the described vehicle.... Since the tip did not provide sufficiently particular information concerning defendant's future actions, an important basis for forming reasonable suspicion was absent. The officers, therefore, lacked reasonable grounds to believe that the informant possessed reliable information about defendant's alleged illegal activities. [Emphasis in original].
Robertson, at 4-5. The court went on, however, to note that the result could have been different:
We note that the police were not powerless to act on the non-predictive, anonymous tip they received. The officers could have set up more extensive surveillance of defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating readily observable facts, the officers had noticed unusual or suspicious conduct on defendant's part, they would have reasonable suspicion to detain him.... In the absence of any suspicious conduct or corroboration of information from which police could conclude that the anonymous informant's allegation of criminal activity was reliable, we must conclude that there was no reasonable suspicion to detain defendant.
Robertson, at 5-6.
In light of Robertson, it appears that the police officers did not have reasonable suspicion to conduct an investigatory stop of the defendants at the time the officers exited their vehicle. At that time, neither defendant had done anything suspicious. The anonymous tip had been corroborated only as to the clothing descriptions of the men and the presence of a white Oldsmobile on the street; there had been no "predictive" information which would tend to make the tip reliable. However, Officer Gillard testified that he and his partner were just exiting their vehicle when Watkins fled. Once Watkins fled into the house, the flight coupled with the corroborated anonymous tip would give the officers reasonable suspicion to justify the investigatory stop of Jones.
Relators argue that the police lacked reasonable suspicion to investigate and also lacked probable cause and exigent circumstances to enter the residence without a warrant. The police were acting on an anonymous tip when they approached the residence. The residence is located in an area known for drug trafficking. Furthermore, they observed that the defendants matched the description known to them from the anonymous tip and they saw the Oldsmobile parked in front of the house. Thus, the tip was substantially corroborated. Once Watkins ran into the residence, the police had witnessed suspicious behavior and had reasonable suspicion to justify an investigatory stop of Jones.
The outcome might be different if Watkins had not fled, or if Jones had not discarded contraband after Watkins ran into the house. Given the sequence of events, however, it appears that the anonymous tip was sufficiently corroborated to justify the investigatory stop of Jones; once contraband was discarded by Jones, there was probable cause to arrest Watkins as well as exigent circumstances to justify entering the residence. Thus, the drugs and firearm seized in Watkin's house would inevitably have been discovered. Because there was reasonable suspicion to stop Jones, the drugs he threw down were properly seized as well. Furthermore, the drugs seized when the defendants were at the station were properly seized incident to the defendants' arrest.
Accordingly, we find no error in the ruling of the trial court.
WRIT GRANTED; RELIEF DENIED.