733 So.2d 1282 (1999)
STATE of Louisiana
v.
Johnell BROWN.
No. 99-K-0640.
Court of Appeal of Louisiana, Fourth Circuit.
May 26, 1999.
*1283 Harry F. Connick, District Attorney, Robin Pittman, Assistant District Attorney, New Orleans, Louisiana, Counsel For Plaintiff-Relator.
Court composed of Judge WILLIAM H. BYRNES III, Judge DENNIS R. BAGNERIS Sr., Judge MICHAEL E. KIRBY.
BYRNES, Judge.
We grant the State's writ application in order to review a ruling of the trial court granting the defendant, Johnell Brown's, motion to suppress the evidence. This Court issued an Order on April 9, 1999, permitting the defendant 15 days in which to file a response. Over thirty days have elapsed since the issuance of that order and the defendant has not filed a response.
On September 24, 1998, the defendant was charged with one count of possession of a firearm while in possession of a controlled dangerous substance, a charge to which he pled not guilty. His motion to suppress the evidence was heard and granted on January 29, 1999. The State now comes before this court seeking relief from this ruling. There is no indication of a trial date.
On September 21, 1998, police officers conducted a traffic stop in the 3000 or 3100 block of Annunciation Street. Driving the car was the defendant Johnell Brown. Brown did not have a driver's license with him at the time, and he told the officers that he had left his license at his home, which was a few blocks from the scene. One officer had him complete a field interview card, gave him a warning, and released him. When the officers returned to police headquarters, they ran Brown's name through the computer and found his license had been suspended.
On September 22nd, the officers were on patrol in the 3100 block of Annunciation when they saw Brown driving the same car he was seen driving the day before. When Brown saw the officers, he quickly pulled the car to the side of the road, jumped out of the car, leaving the car door open, and ran to the front yard of 2332 Annunciation. The officers stopped their car, exited, and called to Brown to step toward their car. One officer noticed Brown was clutching something in his hand. When one of the officers started walking around the police car, Brown turned and fled inside the residence at that address, leaving the door to the residence open. The officers followed Brown inside and saw him throw three packets out of an open window. While one officer escorted Brown outside, the other officer went outside to the area under the window and found three clear plastic bags of marijuana.
The officers and Brown walked to the police car, and they noticed the door to the car Brown had been driving was still open. One officer walked up to the car, looked inside, and saw a gun lying on the driver's side floorboard. Brown told the officers that it was his gun, and from his wallet he produced a receipt for the gun. The officer who appeared at the suppression hearing testified that he and his partner had not yet had a chance to advise him of his rights prior to his statement concerning the gun.
The officer also testified that Brown was known to other officers as "Micey", who was rumored to be involved with people who were involved with guns and drugs. However, the officer did not know Brown was "Micey" at the time he conducted the *1284 traffic stop the day before Brown's arrest. The officer testified that on the day of the arrest, there were some children milling in front of the Brown's car after Brown stopped it, but he denied that the children had been in the car when Brown stopped it or that they went inside the residence with Brown. He stated that he and his partner placed Brown under arrest after the officer retrieved the items Brown threw out the window and discovered they contained marijuana.
It is unclear exactly why the trial court suppressed the evidence in this case. Defense counsel argued at the suppression hearing that the officer's testimony was not credible because of "inconsistencies" in his testimony. However, these "inconsistencies" are negligible at best. Defense counsel first pointed to the officer's statement that he did not stop the defendant on the same street both days, yet the officer later testified that both times he saw the defendant driving on Annunciation Street. The officer testified that he was unsure what defense counsel meant by the "same street", and he insisted that the traffic stop the day before the arrest occurred a few blocks away from the scene of the arrest on the same street. The other "inconsistency" mentioned by defense counsel involved the officer's answers to questions about whether there were any children in the car on the day of the arrest. The officer first testified that the children did not get out of the car but were merely standing in front of the car after Brown stopped it. Defense counsel then further questioned the officer, and there was some confusion over whether defense counsel asked the officer if he saw "them" getting out of the car (meaning the children) or if he saw "him" (meaning the defendant) getting out of the car. The question immediately following the unclear question pertained only to the defendant's actions. When the question was read back by the court reporter later in the hearing, she indicated she thought defense counsel had said "them", while one of the prosecutors stated he thought defense counsel said "him." In any event, the court did not indicate that it did not believe the testimony of the officer.
Defense counsel then argued that the officers were not justified in entering the house, and therefore the marijuana abandoned at the officers' entry was tainted by the illegal entry. It has long been held that property cannot be seized legally if it was abandoned pursuant to an infringement of the person's property rights. However:
if ... property is abandoned without any prior unlawful intrusion into a citizen's right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person's custodial rights.
State v. Belton, 441 So.2d 1195, 1199 (La. 1983)[1]. See also State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208; State v. Tucker, 626 So.2d 707 (La.1993), opinion reaffirmed and reinstated on rehearing by 626 So.2d 720 (La.1993); State v. Laird, 95-1082 (La.App. 4 Cir. 5/8/96), 674 So.2d 425.
An "actual stop" occurs when an individual submits to a police show of authority or is physically contacted by the police. Tucker. An "imminent actual stop" occurs when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain. Id. The Supreme Court listed the following factors to be considered in assessing the extent of police force employed in determining whether that force was "virtually certain" to result in an "actual stop" of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the *1285 individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. Id. An actual stop is imminent "when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain." Tucker, 626 So.2d at 712.
Here, the officers asked the defendant to approach their car and then chased the defendant into the house and overtook him inside the first room inside the house as he threw the marijuana out the window. As such, there was an actual stop. Thus, the officers had to have a justification for entering the house. The State argues the officers lawfully entered the house because they had probable cause to arrest the defendant, and there were exigent circumstances which allowed their entry.[2] In State v. Page, 95-2401, p. 10 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709[3], this court discussed the warrantless entry into a protected area:
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320, 1326 (La. 1979), cert. den., Rudolph v. Louisiana, 454 U.S. 1142, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a "protected" area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
See also State v. Blue, 97-2699 (La.App. 4 Cir. 1/7/98), 705 So.2d 1242[4]; State v. Tate, 623 So.2d 908 (La.App. 4 Cir.1993).[5]
"Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed a crime." State v. Wilson, 467 So.2d 503, 515 (La.1985)[6]. See also Blue; State v. Johnson, 94-1170 (La.App. 4 Cir. 8/23/95), 660 So.2d 942[7].
In Blue, the officers had received a tip concerning drug sales from a certain address by a man wearing certain clothing. The officers went to that address and saw the defendant walk out onto the porch, wearing clothing which matched the description given in the tip. The defendant, however, was unknown to the officers. When the defendant walked back inside the apartment, the officers followed him inside and discovered contraband. On review of the trial court's suppression of this evidence, this court found the officers did not have probable cause to enter the house. Although the defendant's clothing matched the description given in the tip, the officers did not observe him engage in any criminal activity; he merely looked *1286 startled and walked back inside the apartment when he observed the officers. This court distinguished the other case cited by the State wherein the officers' entries were upheld, finding that in those cases there were additional factors which supplied the probable cause to arrest the defendant:
In State v. Hathaway, 411 So.2d 1074 (La.1982), officers received a tip that a known drug user would be delivering drugs to a residence in a certain block and that he would be armed. The officers set up a surveillance of the block and saw the user talking to another known drug user and to the defendant, who was unknown to the officers. The officers decided to detain the men, and when they announced their presence and told the men to "freeze", the other known drug user and the defendant ran inside one of the residences in the block. The officers chased them and entered the residence, where they found the defendant with a gun and the other man trying to flush a syringe. On review of the defendant's conviction, the Court found the tip, combined with the officers' observations and their knowledge of two of the men, gave them reasonable suspicion to stop the group. The flight of one of the known users gave them probable cause to believe he was involved in drug activity, and their belief he entered the house to dispose of evidence gave them exigent circumstances to follow and enter the house.
Likewise, in State v. Killian, 95-826 (La.App. 3rd Cir.5/8/96), 677 So.2d 487 [writ den. 96-1461 (La.11/8/96), 683 So.2d 266], the officers received a tip that marijuana was being sold from a certain residence. The C.I. then conducted a controlled purchase from the residence and informed the officers that although the seller still had a quantity of marijuana in the residence, he was planning to sell it soon. The officers entered the house to secure it while they obtained a warrant. After being advised of his rights, the defendant consented to a search of the house. On review, the court found the officers had probable cause to believe the residence contained drugs, and the imminent sale of the remaining drugs allowed the officers to enter and secure the residence while the warrant was sought. In addition, the court found that because the entry was valid, the consent to search was also valid.
In State v. Morace, 446 So.2d 1274 (La.App. 2nd Cir.1984) [writ den. 448 So.2d 689 (1984)], officers received a tip that the defendant, who was under investigation by them at the time, was riding around a certain area in a certain car with a box containing marijuana. The officers immediately went to that area and saw the defendant drive up in the described car and pull into the driveway of a known drug dealer. The officers stopped the defendant when he left the driveway. The officers ordered the defendant and his companion out of the car, and inside the car the officers could see a gun and a bag containing marijuana lying in plain view. The officers then searched the car and found more drugs. Pursuant to a search incident to arrest, the officers seized a vial of cocaine from the defendant. The officers then had the car towed, and pursuant to a warrant to search the car they found more guns. On review, the court found that the detailed tip, combined with the officers' knowledge of the defendant and the other dealer and their observations, gave the officers probable cause to arrest the defendant when they stopped him.
The remaining cases cited by the State are even less similar to the case here. In State v. Robertson, 557 So.2d 315 (La.App. 4th Cir.1990), the officers had detained a man walking out of an abandoned building about which they had received complaints of trespassing. As one of the officers investigated the building, he looked through an open door and saw the defendant and others *1287 standing around a table upon which sat cocaine. This Court found the officer was justified in entering the building to investigate the complaint. In State v. Lyons, 514 So.2d 558 (La.App. 4 Cir. 1987) [writ den. Lyons v. State, 581 So.2d 680 (1991)], the officers were investigating a call of a shot fired through the floor of an apartment in a four-plex. The defendant lived in the apartment below, and the officers arrested him at his door. Fearing for their safety, the officers then entered the apartment to make sure no one else was in the apartment. Once inside, they saw a gun lying on a bed in a room directly below the hole created by the gunshot. This Court found the officers' fears for their continued safety gave them exigent circumstances to enter the apartment from which the shot had originated. In State v. Henderson, 571 So.2d 770 (La.App. 2nd Cir.1990), the defendant was seen near the area where a convenience store customer had been beaten and robbed. The defendant was wearing a distinctive shirt which matched the description of the shirt worn by the perpetrator and also worn by a man seen leaving the convenience store. Police officers followed the defendant to his trailer, surrounded it, and then saw the shirt lying inside a detached outbuilding. Although the court spoke of "exigent circumstances", it found the officers could lawfully seize the shirt found in plain view in the outbuilding.
State v. Blue, 97-2699, pp. 4-6, 705 So.2d at 1245-1246.
Here, the State argues the officers had reasonable suspicion to stop the defendant because they saw him driving the same car he had been driving the day before, and they knew his license had been suspended. The State argues that this reasonable suspicion blossomed into probable cause to arrest when the defendant refused their order to come to their car and turned and fled into the residence while clutching something in his hand. The officers already had probable cause to arrest the defendant for driving without a license when they saw him driving the car just prior to the stop. Thus, the probable cause prong of the exigent circumstance warrant exception was met.
The State next argues that the fact that the defendant was clutching something in his hand gave them the necessary exigent circumstances to enter the house because the object in his hand could have been contraband and he could dispose of it inside the house. Moreover, it is sufficient that the officers were in "hot pursuit" of the defendant. In State v. Byas, 94-1999 (La.App. 4 Cir. 12/15/94), 648 So.2d 37, this court also combined the theories of exigent circumstances and hot pursuit. The officers received a tip from a reliable known informant that "Cory" was selling cocaine at a certain address. The C.I. also stated that "Mary" lived at that address and aided Cory in the operation. The officers went to the residence and saw a man standing outside. The man saw the officers and fled. The next evening, the officers again approached the residence and saw the same man standing outside. Upon seeing the officers, the man fled toward the rear of the residence, and one officer saw him throw a bag, containing a large white object, over a fence into a vacant lot next to the residence. The man ran to the back of the residence, knocked, and was admitted by the defendant. When she saw the officers pursuing, the defendant slammed the door shut. The officers entered and seized the defendant and the man. The officers searched her and found in her pant pocket a matchbox containing three rocks of cocaine. Upholding the officers' entry into the house and the search of the defendant, this court noted that the officers had probable cause to arrest the man based upon the tip from the C.I., the man's flight, and his abandonment of the bag containing what appeared to be cocaine. The officers were justified in chasing the man into the residence in "hot pursuit". This court further found *1288 that once the officers were inside the house, they were justified in arresting the defendant for her commission of acts which constituted resisting arrest and for her participation in the drug operation.
Here, the officers had probable cause to arrest the defendant for driving without a license. When he noticed the officers, he immediately stopped and exited the car, clutching something in his hand. He ignored the officers' order to step to their car and instead fled into the residence, leaving the door open. Given these circumstances, it appears the officers' entry was justified under the "hot pursuit" exception to the warrant requirement. When they entered, they saw the defendant throw the packets out the window. Because the marijuana was abandoned as a result of a justified impingement upon the defendant's constitutional rights, the officers could lawfully seize the marijuana packets and arrest the defendant not only for driving without a license but also for the possession of the marijuana.
As the officers were walking the defendant back to their car, one of them went to the defendant's car in order to close the car's door. The officer looked inside the car and saw a gun lying in plain view on the floorboard on the driver's side of the car. The officers were justified in seizing this gun pursuant to the "plain view" exception to the warrant requirement. In State v. Smith, 96-2161 p. 3 (La.App. 4 Cir. 6/3/98), 715 So.2d 547, 549, this court discussed this exception:
In order for an object to be lawfully seized pursuant to the "plain view" exception to the Fourth Amendment, "(1) there must be a prior justification for the intrusion into a protected area; (2) in the course of which the evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband." State v. Hernandez, 410 So.2d 1381, 1383 (La.1982); State v. Tate, 623 So.2d 908, 917 (La.App. 4 Cir.), writ denied 629 So.2d 1126 and 1140 (La.1993). In Tate, this court further noted: "In Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Court held that evidence found in plain view need not have been found "inadvertently" in order to fall within this exception to the warrant requirement, although in most cases evidence seized pursuant to this exception will have been discovered inadvertently."

Tate at 917.
Here, the officer was justified in walking up to the car and closing the door. Upon doing so, he looked inside and saw the gun lying on the floorboard. Thus, the gun was also lawfully seized.
As noted above, there is no indication the trial court suppressed the evidence because it did not believe the officer's testimony. Based upon the officer's testimony, it appears the trial court erred by suppressing the evidence because the officers had a lawful basis for the seizure of both the marijuana and the gun.
For the foregoing reasons, we grant the State's writ application, reverse the ruling of the trial court granting the defendants motion to suppress the evidence, and remand for further proceedings consistent with this opinion.
WRIT GRANTED; JUDGEMENT REVERSED AND REMANDED.
NOTES
[1] Cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
[2] The State also argues that because the officers could have seized the marijuana if it had been thrown out the window if they had not entered the house, the marijuana would have inevitably been discovered. The fallacy of this argument is that chances are the defendant would not have thrown the marijuana out the window if the officers had not entered his residence.
[3] Writ den. 96-2352 (La.2/21/97), 688 So.2d 522.
[4] Writ den. 98-0340 (La.3/27/98), 716 So.2d 887.
[5] Writ den. 629 So.2d 1126 and 1140 (1993).
[6] Cert. den. Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985).
[7] Writ den. State v. Johnson, 95-2331 (La.2/2/96), 666 So.2d 1092, and State v. Dibartolo, 95-3044 (La.2/2/96), 666 So.2d 1105.