| Judge MIRIAM G. WALTZER.
STATEMENT OF CASE
Steve Banks and Jamar Rolling were jointly charged on 26 June 1997, by bill of information with one count of possession with intent to distribute cocaine, a violation of La. R.S. 40:967B(4)(b), and one count of possession with intent to distribute marijuana, a violation of La. R.S. 40:966(A)(1). Banks and Rolling pled not guilty at their arraignments. The trial court found probable cause and denied the motions to suppress. On 4 September 1997, Jamar Rolling was charged with a second count of possession with intent to distribute marijuana. Following trial on the merits, on 12 March 1998, the jury found Banks and Rolling guilty as charged. On 28 October 1998, defense counsel filed a motion for new trial, motion in arrest of judgment and motion for judgment of acquittal as to *31 both defendants. The court denied the motions as to the 26 June 1997 charges, and sentenced Steve Banks to fifteen years with credit for time served. The court granted Rolling’s motion for new trial on the 4 September 1997 charge, and revisited the motion to suppress, finding an absence of consent to search, and suppressed the evidence. The State noted its intent to seek writs, but did not do so. The court sentenced Jamar Rolling |gto five years, suspended, three years probation with conditions on the 26 June 1997 charges. On 23 April 1999, defendants filed motion for this out-of-time appeal.
STATEMENT OF FACT
New Orleans Police Department (NOPD) Officers Daniel Scanlan and Robert Haar testified that at approximately 9:15 p.m. on 4 March 1997, they were on proactive narcotics patrol in an unmarked car in the St. Bernard Housing Development, a “high-crime area” that Officer Scanlan knew was known as designated as a place where drug transactions were often conducted. The officers approached the Senate Street courtyard of the development, and noticed the defendants sitting on a porch on Senate Street. The officers watched Banks remove a shiny object from a paper bag and examine it. Because the officers believed the defendants were engaged in illegal activity, they radioed their location and the defendants’ descriptions, and requested backup. As soon as backup arrived, the defendants ran. Banks gathered his paper bags, and ran into a nearby apartment, while Rolling fled across the courtyard, discarding a bag, subsequently determined to contain marijuana, before officers apprehended him.
Officer Scanlan knocked on the door of the apartment into which Banks had run, and could hear screaming and scuffling inside the apartment. A woman answered the door and denied that anyone had entered the apartment, but Officer Scanlan could see Banks, sitting on the sofa, breathing heavily. Officers entered the apartment and detained Banks. Near the sofa, Officer Scanlan found two bags containing powered and crack cocaine, a small scale and marijuana. After Banks was arrested, Officer Haar returned to the porch where the officers first noticed Banks, and retrieved more crack cocaine, a pack of rolling papers, a single edge|3razor and several plastic bags whose corners had been cut off. Officer Haar testified that these bags with cut-off corners were common packaging for narcotics.
Officer Bret Pitman testified that he and Officers Todd Morrell and Herbert Warren responded to Officer Scanlan’s call for back-up. When the defendants saw the backup officers, they fled. Banks ran into an adjacent apartment, as Rolling exited the courtyard, discarding a plastic bag as he ran. Officers Morrel and Warren apprehended Rolling, while Officer Pitman retrieved the plastic bag of marijuana discarded by Rolling. Officer Pitman assisted Officer Scanlan in apprehending Banks in an adjacent apartment. The officers retrieved cocaine, marijuana and plastic bags from the sofa of the apartment into which Banks fled, and more of the same items from the porch on which Scanlan and Haar initially spotted the defendants.
On 17 March 1997, a citizen flagged down Officers Scanlan and Haar near the intersection of Gibson Street and Harrison Avenue with a complaint of narcotics activity in the area. As a result of the conversation with the citizen, the officers began searching for Rolling in the area of Foy Street and St. Bernard Avenue, without success. The following night, as Officers Scanlan and Haar patrolled the area in their marked unit, they spotted Rolling parking his car on Foy Street near St. Bernard Avenue. When Rolling saw the *32 officers, he became nervous and got back into his car, opened the car door, dropped a bag beside the car, and began walking back to the housing development. At that point, the officers made an investigatory stop, and performed a protective pat down of Rolling’s outer clothing. Officer Scan-lan then walked back to Rolling’s car, and retrieved the abandoned object, which proved to be marijuana. Officer Scanlan looked inside Rolling’s vehicle and could see a bag of contraband and a gun on the Rfront seat. Scanlan opened the car with Rolling’s key and retrieved a fully loaded nine-millimeter handgun and a large plastic bag containing numerous smaller bags of marijuana.
After having secured Rolling, Officers Scanlan and Haar, accompanied by three other officers, relocated to an apartment on Charms Court. Ms. Debra Richardson answered the door, and denied the officers access. Fearing Ms. Richardson might destroy evidence, Officer Scanlan used Rolling’s key to enter the apartment. The officers secured the premises and Ms. Richardson left the apartment to speak to her neighbor, Mr. Hayes. Officer Scanlan returned to the police station to obtain a search warrant. Mr. Hayes accompanied Ms. Richardson back to her apartment where officers explained to him their request to search Ms. Richardson’s apartment. As Officer Scanlan typed the warrant, he learned that Ms. Richardson had given permission to search the apartment. The officers searched a bedroom containing items bearing Rolling’s name, including a copy of his driver’s license and library card, and found marijuana and plastic bags. Ms. Richardson signed the permission to search form as well as the receipt for the confiscated items. Mr. Hayes witnessed both documents.
NOPD Criminalists Teresa Lamb and Glen Guillot tested the evidence seized in this case. Ms. Lamb tested the off-white substances, which proved to be cocaine, and the material contained in a large bag and several small bags tested positive for marijuana. Mr. Guillot’s testing on the vegetative matter contained in two large plastic bags and in twenty-two small plastic bags proved positive for marijuana.
Ms. Christian Randall was called by the defense, and testified that on the night of 4 March 1997, she was visiting her friend, Seleka Turner, in the St. | ¡¡Bernard housing development. Ms. Randall stepped onto Ms. Turner’s second story porch and called Steve Banks, who was sitting on the porch below, to come upstairs. Banks complied and as he sat on Ms. Turner’s sofa, the police knocked on the door. Ms. Turner admitted them. The officers searched Banks, Ms. Randall and Ms. Turner. They found a paper bag on Ms. Turner, which the officers confiscated. They arrested Banks, and began searching the first floor porch and exterior grounds. Ms. Randall denied that the officers found any contraband on her or Banks, and said that the scale admitted into evidence was found in a mailbox.
Ms. Debra Richardson, Rolling’s mother, testified that police officers came to her house on Charms Court at midnight on 18 March 1997, and informed her of her son’s drug dealing. The officers told her they wanted permission to search her residence for drugs. She refused, and one officer forced his way into her house. As all of the officers entered, she ran across the street to enlist the aid of a neighbor. About ten minutes later, she and a neighbor returned to her house, but the officers would not admit her unless she signed papers giving them permission to search the house. The officers told her that without giving them permission to search, they would have to get a search warrant, which *33 could take several hours. Ms. Richardson signed a permission to search document.

ERRORS PATENT

A review for errors patent on the face of the record reveals three.
As to Jamar Rolling, there is no documentation in the record indicating that he was formally arraigned on the 4 September 1997 count of possession with intent to distribute marijuana. However, if the defendant enters upon the trial without objecting to the failure to be arraigned, the error is waived and it is considered as if the defendant pled not guilty. C.Cr.P. art. 555; State v. Williams, 98-1947 (La.App. 4 Cir. 8/23/00), 769 So.2d 629. In this case, no objection was made by the defendant for the failure to arraign. Accordingly, any resultant error was waived.
The trial judge rendered illegally lenient sentences as to both defendants.
The court sentenced Banks to fifteen years at hard labor but failed to deny benefits of parole, probation or suspension of sentence on the first five years of the sentence, as mandated by R.S. 40:967B(4)(b). Further, the court imposed a suspended five-year sentence, and placed Rolling on three years probation, which is not authorized by La. R.S. 40:967B(4)(b). Nevertheless, appellate courts may not amend or set aside an illegally lenient sentence on its own motion when the State has not sought review of the sentence. State v. Fraser, 484 So.2d 122 (La.1986).
The third error patent applies to both defendants. The district court denied the defendants’ motions for new trial on 28 October 1998, and sentenced them that same day. La.C.Cr.P. art. 873 requires a twenty-four-hour delay between the denial of a motion for new trial and sentencing, unless the defendant waives such delay. In this case, defense counsel acquiesced in the immediate imposition of sentence, thereby waiving the twenty-four hour waiting period. State v. Jefferson, 97-2949 (La.App. 4 Cir. 4/21/99), 735 So.2d 769, 772.
FIRST ASSIGNMENT OF ERROR: the trial court erred in denying the motions to suppress the evidence seized the night of 4 March 1997 because the police lacked reasonable suspicion to stop them.
On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D); State v. Jones, 97-2217 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234. A trial court’s ruling on a motion to |7suppress the evidence is entitled to great weight. State v. Mims, 98-2572, (La.App. 4 Cir. 9/22/99), 752 So.2d 192.
When property is abandoned without any prior unlawful intrusion into a person’s right to be free from governmental interference, that property may be lawfully seized. State v. Williams, 2000-2116 (La.App. 4 Cir. 2/28/01), 782 So.2d 145. In such cases there is no expectation of .privacy and thus no violation of the person’s custodial rights. Only when the person is actually stopped without reasonable cause or when a stop without reasonable cause is imminent, is the right to be left alone violated, thereby rendering unlawful any resultant seizure of abandoned property. State v. Belton, 441 So.2d 1195, 1199 (La.1983).
At the trial of this matter, Officer Haar testified that as he and Officer Sean-lan entered the housing development courtyard in their unmarked police unit, Banks and Rolling appeared startled and nervous. Rolling stood up, dropped a bag *34 of marijuana, and ran. Banks grabbed a paper bag, and ran into a nearby apartment. The uncontroverted testimony indicates that Rolling abandoned the marijuana as he fled, prior to being stopped by the police. As such it was subject to seizure.
The next inquiry concerns whether the warrantless search of and seizure from Ms. Turner’s apartment was legal.
As a general rule, searches and seizures made without a warrant issued subsequent to a judge or magistrate’s' finding of probable cause are per se unreasonable and violate a citizen’s rights under the Fourth Amendment to the U.S. Constitution and Article I, Sec. 5 of the Louisiana Constitution.
An officer has probable cause to arrest or to search when the facts and circumstances known to him and of which he has reasonably trustworthy | Information are sufficient to justify a person of ordinary caution in believing that the person to be arrested has committed a crime or that the area to be searched contains evidence of a crime. See State v. Brown, 99-0640 (La.App. 4 Cir. 5/26/99), 733 So.2d 1282, 1285 (citing State v. Wilson, 467 So.2d 503, 515 (La.1985), cert. denied sub nom. Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985)). However, probable cause alone does not justify the invasion of a citizen’s reasonable expectations of privacy. A warrantless intrusion into an area in which someone .has reasonable expectations of privacy, is only justified when there is both probable cause and exigent circumstances. Id.; see also State v. Blue, 97-2699 (La.App. 4 Cir. 1/7/98), 705 So.2d 1242, 1244. Examples of exigent circumstances include an escape attempt by the defendant; the possibility of a violent confrontation that could cause injury to the officers and the public; and the possibility that evidence will be destroyed. Id. In such situations, obtaining a warrant is impractical.
The exigent circumstance doctrine applies equally to warrantless seizures of persons and property because the same privacy interests are implicated. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980).
In State v. Watkins, 98-2578 (La.App. 4 Cir. 12/16/98), 726 So.2d 994, officers patrolling in an unmarked police vehicle and attired in plain clothes responded to a dispatch regarding two males selling narcotics at 2624 N. Rocheblave Street. The police dispatcher provided clothing and physical descriptions of the suspects and further advised that the suspects were standing next to a white vehicle. When the officers arrived at the location, they saw the defendants, Watkins, Jones and Walker, who matched the dispatcher’s description, walking up the steps of the front porch of the residence. When the officers exited [ntheir vehicle, Watkins ran into the house. One officer pursued Watkins and observed him reach into the waistband of his pants and discard a firearm. Watkins then ran into the bathroom and discarded a bag of heroin packets. Meanwhile, other officers ordered Jones and Walker to lie down on the porch. As he complied, Jones threw a small bag of heroin packets off the side of the porch into the alley.
Under cross-examination, the officers testified that they did not know the defendants prior to their arrests and saw no suspicious activity by any of the men except that they matched the descriptions given and that Watkins ran into the house when the police appeared. This court found no error in the trial court’s refusal to suppress the evidence, noting that:
... once contraband was discarded by Jones, there was probable cause to arrest Watkins as well as exigent circumstances to justify entering the residence. *35 Thus, the drugs and firearm seized in Watkins’ house would inevitably have been discovered: Because there was reasonable suspicion to stop Jones, the drugs he threw down were properly seized as well.
Id. at p. 11, 726 So.2d at 999.
In the present case, although Officers Scanlan and Haar were not acting pursuant to a tip, as in Watkins, they were on proactive patrol in an area noted for drug activity and an area where the officers had made previous narcotics and weapons arrests. Like the defendants in Watkins, Banks and Rolling fled upon sight of the officers and Rolling abandoned marijuana. Having seen Rolling discard the marijuana, the officers had probable cause to believe Banks was engaged in illegal activity also. Officer Scanlan’s concern for the safety of the occupants coupled with his belief that Banks would destroy evidence constituted exigent circumstances authorizing Scanlan to make a warrantless entry. Therefore, the drugs found near the sofa on which Banks was seated would inevitably have Imbeen discovered. Because Rolling discarded the marijuana prior to being stopped by the police, that contraband was properly seized also.
This assignment of error lacks merit.
SECOND ASSIGNMENT OF ERROR: the trial court erred in denying defendants’ motions to sever, because evidence of one’s crimes and bad acts prejudiced the other.
Counsel maintains that the jury’s verdict hinged on evidence which showed that Rolling was an inveterate dope dealer without remorse and that Banks, already linked with Rolling in the first two counts, was revealed to have chosen as his associate an incorrigible narcotics offender.
Jointly indicted defendants shall be tried jointly unless either (1) the state elects to try them separately; or, (2) on motion of defendant, the court, after contradictory hearing, is satisfied that justice requires a severance. La.C.Cr.P. art. 704. Whether justice requires a severance must be determined by the facts of each case. State v. Thibodeaux, 315 So.2d 769 (La.1975). A defendant is required to show by convincing evidence that a severance is or was required. State v. Tate, 95-0929 (La.App. 4 Cir. 6/7/95), 657 So.2d 567, 568. Whether to grant or deny a severance is within the sound discretion of the trial court, and the court’s decision will not be disturbed absent clear abuse of that discretion. State v. August, 96-2777 (La.App. 4 Cir. 9/16/98), 719 So.2d 536, 541.
Severance is not required when neither defendant attempts to introduce evidence of other’s guilt, or to place blame on the other, and neither had to convict the other in order to go free, so that neither was in the position of having to do battle with both the State and his code-fendant. State v. Smith, 470 So.2d 128 (La.App. 4 Cir.1985), rev’d. on other grounds, 491 So.2d 641, (La.1986).
|1TIn this case, with regard to the 4 March 1997 incident, Banks and Rolling denied any involvement in the crimes. There was no showing of antagonistic defenses. Thus, neither was in a position of having to battle both the State and his co-defendant. Smith, supra.
As to Rolling’s additional charge of possession with intent to distribute marijuana, the State’s witnesses clearly distinguished that incident from the 4 March 1997 incident. The facts were simple; there was no showing the jury confused the facts of the incidents. Other than the defendants’ assertions to the contrary, we find no evidence that the trial judge in this case *36 abused her discretion by denying the motions to sever.
This assignment of error lacks merit.
THIRD ASSIGNMENT OF ERROR: The absence of the transcript of the motion to suppress hearing precludes the defendants’ exercise of their constitutional right of review.
The record contains a certificate, dated 6 January 2001, from the court reporter that a diligent search for the tape of the 11 March 1998, motion to suppress hearing was unsuccessful and, therefore, she is unable to produce a transcript of the motion hearing.
Under Article I, § 19 of the Louisiana Constitution, a person is entitled to judicial review based upon a complete record of all evidence upon which the judgment is based.
In State v. Archie, 462 So.2d 248 (La.App. 4 Cir.1984), portions of the motion to suppress hearing transcript had been lost. This court held that this circumstance did not warrant vacating the conviction and sentence and that all that l^was required was for the trial court to conduct another hearing on the motion to suppress and act on the motion.
In State v. Vaughn, 378 So.2d 905 (La.1979), portions of the testimony from the defendant’s motion to suppress the identification were not transcribed because of a malfunction in the recording equipment. On appeal, the Supreme Court stated that the missing testimony was hardly relevant or material to the issue presented by the motion to suppress; however, the court noted .that in determining the correctness of a ruling on d pretrial motion to suppress, it was no: limited to the evidence presented at the hearing on that motion, but could consider all pertinent evidence adduced at the trial on the merits.
In State v. Byes, 97-1876 (La.App. 4 Cir. 4/21/99), 735 So.2d 758, writ denied 99-1559 (La.11/5/99), 751 So.2d 231, this court noted that the only witness to testify at the motion hearing also testified at trial, and gave extensive testimony concerning the seizure of the evidence.
In this case, Officers Scanlan and Haar testified at the motion hearing and the trial. The officers adequately recounted their reasons for stopping the defendants, and, as in Byes, there was no showing made that the trial judge erred in denying the motion to suppress. This assignment is without merit.

CONCLUSION

For the foregoing reasons, we affirm the sentences and convictions.
CONVICTIONS AND SENTENCES AFFIRMED.