STATE OF LOUISIANA     *        NO. 2024-K-0389

VERSUS     *

       COURT OF APPEAL

SANTANA WOOLENS, ET AL.    *

       FOURTH CIRCUIT

    *

       STATE OF LOUISIANA

    * * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 555-235, SECTION "E"
Judge Rhonda Goode-Douglas
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Dale N. Atkins, Judge Rachael
D. Johnson)

Mary Ella W. Simmons
Orleans Public Defenders
2601 Tulane Avenue, Suite 700
New Orleans, LA 70119

    COUNSEL FOR RELATOR, Santana Woolens

            **WRIT GRANTED; RELIEF DENIED**
                 **AUGUST 9, 2024**

DNA

DLD

RDJ

Relator, Santana Woolens ("Mr. Woolens"), seeks review of the district court's May 30, 2024 ruling, which denied his Motion to Sever. For the following reasons, we grant Mr. Woolens' writ application but deny relief.

**RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On August 18, 2022, the State of Louisiana ("State") charged Mr. Woolens and Toshiba Ancar ("Ms. Ancar") by bill of information with one count of armed robbery with a firearm, in violation of La. R.S. 14:64.3, and three counts of second-degree kidnapping, in violation of La. R.S. 14:44.1. At his August 25, 2022 arraignment, Mr. Woolens pled not guilty to these charges. On December 8, 2022, Ms. Ancar also pled not guilty.

During a probable cause hearing in this matter, the district court heard testimony from Detective Roshain Mitchell ("Detective Mitchell"), who stated that he worked with the New Orleans Police Department's Sixth District Violent Crimes Unit. Detective Mitchell explained that on June 19, 2022, he was dispatched to an armed robbery that occurred at Surrey's Café on Magazine Street, and he interviewed several witnesses and victims. According to Detective Mitchell, he learned that at approximately 3:20 p.m., the employees of Surrey's Café were

1

counting the money earned that day when "a male subject . . . entered the rear office armed with a firearm and wearing a ski mask," while "demanding money." Detective Mitchell explained that after speaking with the employees who were the victims of the crime (hereinafter "victims"), he obtained surveillance footage from the area that demonstrated:

> a red or maroon Nissan Murano travel up Euterpe Street from Coliseum Street. It parked in the 1000 block of Euterpe Street near the intersection of Magazine Street. A male subject was observed exiting the driver's side of that vehicle. And . . . throughout the course of the video, he kept going back and forth from the vehicle towards the restaurant.

Detective Mitchell testified that he subsequently presented a picture of the vehicle from the surveillance footage to the victims and asked if they recognized the vehicle. Per Detective Mitchell, they responded that the vehicle belonged to Ms. Ancar and Mr. Woolens who were employees of Surrey's Café. Detective Mitchell testified that when officers subsequently questioned Mr. Woolens, he "stated he clocked out at 2:25 p.m. that day. He stated he took the bus home and that Ms. Ancar was the one that was in possession of the vehicle." By contrast, according to Detective Mitchell, Ms. Ancar informed officers that "Mr. Woolens was the one that was in possession of the vehicle" that day. Further, Detective Mitchell testified that Ms. Ancar reported "[t]hat just before Mr. Woolens committed the robbery, he had asked her to clock him out," which she did.

On May 14, 2024 Mr. Woolens filed a "Motion to Sever Defendants" ("Motion to Sever").[1] Therein, he stated: "According to the police report, Ms. Ancar allegedly told officers that Mr. Woolens had possession of their car on the date of the robbery, which was allegedly used in the robbery." Mr. Woolens

_____

[1] Ms. Ancar also filed a Motion to Sever.

2

contended that trial of Mr. Woolens and Ms. Ancar together would violate his confrontation clause and due process rights.

On May 30, 2024, the district court held a hearing on Mr. Woolens' Motion to Sever. In pertinent part, counsel for Ms. Ancar stated that his "defense for [his] client [was] going to be antagonistic towards the other side," and that in his opening and closing statements he would state that Mr. Woolens committed the armed robbery. However, counsel for Ms. Ancar also stated that he had not decided if Ms. Ancar would take the witness stand. In response, counsel for Mr. Woolens argued that "[a]ny of those statements would obviously be extremely prejudicial to [Mr. Woolens]" and "put him in the position of . . . battling . . . the [S]tate and his codefendant." The district court denied Mr. Woolens' Motion to Sever "because there has not been a substantial showing that the defenses are antagonistic." Thereafter, Mr. Woolens noticed his intent to seek supervisory review and timely filed his writ application with this Court.

## DISCUSSION

Regarding severance, La. C.Cr.P. art. 704 provides:

> Jointly indicted defendants shall be tried jointly unless:
>
> (1) The state elects to try them separately; or
>
> (2) The Court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.

"[A] policy consideration implicit in [La. C.Cr.P. art.] 704 situations is the reasonableness of presenting the entire case at one time." *State v. Williams*, 416 So.2d 914, 916 (La. 1982). That is, "[p]iecemeal litigation is not sanctioned by the courts and, where the same witnesses would be called to testify, judicial economy dictates that there be one trial." *State v. Hicks*, 2017-696, p. 15 (La. App. 5 Cir.

3

10/17/18), 258 So.3d 1039, 1050 (citing *State v. Williams*, 2016-417, p. 35 (La. App. 5 Cir. 8/30/17), 227 So.3d 371, 395). Further, "[j]oinder expedites the administration of justice, reduces the congestion of the trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve on juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." *State v. Duckett*, 2012-578, p. 15 (La. App. 5 Cir. 5/16/13), 119 So.3d 168, 177 (quoting *State v. Bradford*, 367 So. 2d 745, 747 (La. 1978)). But, as this Court has explained, "[a] severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other causing each defendant to defend against his co-defendant and the state." *State v. Pollard*, 2014-0445, p. 19 (La. App. 4 Cir. 4/15/15), 165 So.3d 289, 303 (quoting *State v. Everett*, 2011-0714, p. 33 (La. App. 4 Cir. 6/13/12), 96 So.3d 605, 629). "Severance is not required," however, if "neither defendant attempts to introduce evidence of [the] other's guilt, or to place blame on the other, and neither [has] to convict the other to go free, so that neither [is] in the position of having to do battle with both the State and his codefendant." *State v. Banks*, 2000-0525, p. 10 (La. App. 4 Cir. 10/17/01), 800 So.2d 28, 35 (citation omitted).

"Whether justice requires severance must be determined by the facts of each case." *Id.* A defendant who seeks a severance must "show by convincing evidence that a severance is . . . required." *Id.* The decision whether to grant a severance is within the sound discretion of the district court. *Pollard*, 2014-0445, p. 20, 165 So.3d at 303. Accordingly, an appellate court will not reverse the district court's decision unless the district court abused its discretion. *Id. See also Banks*, 2000-0525, p. 10, 800 So.2d at 35 (citing *State v. August*, 1996-2777, p. 7 (La. App. 4

4

Cir. 9/16/98), 719 So.2d 536, 541). In *State v. Craddock*, the Louisiana Supreme Court explained that it has "jurisprudentially developed the 'antagonistic defense' standard as a means of testing the [district] court's exercise of its discretion." 2023-01147, pp. 1-2 (La. 11/15/23), 373 So. 3d 47, 47-48 (first citing *State v. Lavigne*, 412 So.2d 993, 996-97 (La. 1982); then citing *State v. Thibodeaux*, 315 So.2d 769, 770 (La. 1975); and then citing *State v. McGraw*, 366 So.2d 1278 (La. 1978). Under the antagonistic defense test, the district court abuses its discretion in not granting a motion for severance if the district court is aware that one "defendant intends to lay blame for the offense at the feet of a co-defendant." *Id.* (first citing *State v. Webb*, 424 So. 2d 233, 236 (La. 1982); and then citing *Bruton v. United States*, 391 U.S. 123, 136, 88 S.Ct. 1620, 1628, 20 L.E.2d 476 (1968)).

The evidence presented at the probable cause hearing reflected that Ms. Ancar reported to law enforcement that Mr. Woolens alone had use of their shared vehicle during the period in which the armed robbery occurred. She also claimed that Mr. Woolens asked her to clock him out just before he committed the armed robbery. These statements implicate Mr. Woolens as the likely perpetrator of the armed robbery and kidnappings; but, at the hearing on Mr. Woolens' Motion to Sever, counsel for Ms. Ancar stated that he had not yet made the decision whether Ms. Ancar would testify. In light of the fact that counsel for Ms. Ancar had not yet made this decision, we find that the district court did not abuse its discretion in denying Mr. Woolens' Motion to Sever. However, we hold that if the State chooses to proceed with a joint trial, it cannot introduce Ms. Ancar's statements which implicate Mr. Woolens unless Ms. Ancar testifies at trial. That is, if Ms. Ancar testifies in a joint trial at which the State uses her statements, Mr. Woolens will have the opportunity to cross-examine Ms. Ancar, thereby upholding his

confrontation and due process rights under United States and Louisiana Constitutions.

## DECREE

For the foregoing reasons, we grant Mr. Woolens' writ application but deny relief at this juncture. The district court did not abuse its discretion in its May 30, 2024 ruling denying Mr. Woolens' Motion to Sever because Ms. Ancar's counsel has not yet made the decision as to whether she will testify if the State proceeds with a joint trial.

**WRIT GRANTED; RELIEF DENIED**